UNITED STATES of America, Plaintiff–Appellee,

v.

Jonathan PENNY, Defendant–Appellant.

No. 94–2934.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1995.

Decided July 26, 1995.

Barry Rand Elden, Asst. U.S. Atty., Gil Soffer (argued), Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Michael D. Monico, Barry A. Spevack (argued), Monico, Pavich & Spevack, Chicago, IL, for defendant-appellant.

Before BAUER and RIPPLE, Circuit Judges, and REYNOLDS, District Judge.*

RIPPLE, Circuit Judge.

After a jury trial, Jonathan Penny was convicted of criminal conspiracy to distribute narcotics and of distribution of narcotics, in violation of 21 U.S.C. §§ 841 and 846. The district court sentenced Mr. Penny to twenty-five years of imprisonment followed by supervised release for the remainder of his natural life. Mr. Penny appeals the conviction. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

A. *Facts*

From 1984–90, Jonathan Penny purchased and sold large quantities of narcotics. Starting in the early 1980s, Mr. Penny had begun to accumulate significant wealth due to his drug business. Andre Jackson, a former large-scale buyer and seller of drugs in Chicago, and later a government informant, testified that he had noticed that Mr. Penny's lifestyle reflected an increase in wealth. Mr. Penny, on one occasion, related to Jackson that he was generating income through heroin sales.

The record contains evidence that, as early as 1984, Mr. Penny was involved in a broad-reaching drug distribution scheme. While Mr. Penny was serving a term of imprisonment in the East Moline Correctional Center, he stated to his cell mate, William Bauer, a prisoner sentenced to imprisonment for armed robbery, that he earned his livelihood selling cocaine. He explained to Bauer how he ran his business, including how his wife, Clara, handled the business while he was imprisoned. He also shared with Bauer the manner in which he conducted his drug dealings.

Mr. Penny, on Bauer's suggestion, arranged for a narcotics transaction while he was imprisoned. Mr. Penny was to provide one ounce of cocaine to associates of Bauer who would in turn sell it on the street. To facilitate the transaction, Mr. Penny contacted LaVada Davis, a drug dealer whose services Mr. Penny engaged consistently. Ms. Davis transported the cocaine to Bauer's wife, who then delivered the narcotics to an acquaintance of Bauer's in Peoria. Payment was made to Penny through Bauer's wife who brought the cash to Bauer in jail.

Signs of a large drug distribution network were also demonstrated by the manner in which Mr. Penny directed an independent carpenter, Peter Loeb, to build and rehabilitate his many residences. Starting in 1983, Mr. Penny paid Loeb in cash—weekly for labor and monthly for materials. The work that Loeb performed grew so extensively that, from 1985–88, Loeb worked exclusively for Mr. Penny. No limit was set on the cost of Loeb's work. He gutted and remodeled residences—carpentry work alone for each residence many times exceeding $50,000. Loeb, per Mr. Penny's instructions, constructed concealed rooms and closets with false backs in these properties. Occasionally, Mr. Penny employed Loeb as a consultant, and flew him down to Arizona so that Loeb could evaluate whether it would be advisable to build on various parcels of land. Loeb testified that, for the last three years that he worked for Mr. Penny, he was paid $720,000 for labor and materials. He also stated that, when he traveled to Penny's residence to receive payment for his work, he observed cash and packets of white powder lying on Penny's bed.

Mr. Penny also spent significant sums of money from 1984–1989 on automobile restoration and racing. Mr. Penny paid for the

* The Honorable John W. Reynolds, United States District Judge for the Eastern District of Wisconsin, is sitting by designation.

installation of secret compartments in three of his automobiles. Additionally, each year, Mr. Penny paid approximately $25,000 in cash to have an automobile restoration company do general work on his automobiles and to create an insignia Mr. Penny could place in his vehicles. In 1987, Mr. Penny paid a professional race car driver $40,000 to race a car painted with Penny's name and insignia.

Mr. Penny and Andre Jackson continued to associate after Penny left jail. In 1987, Mr. Penny told Jackson that he was selling large amounts of brown heroin. Mr. Penny stated at the time that brown heroin was more profitable than cocaine, and showed Jackson approximately five buildings that he claimed he had purchased and remodelled with proceeds from heroin sales. In May 1987, Jackson purchased 150 pounds of marijuana from Penny. When Jackson took delivery of the drugs, he was led through a secret door concealed in a kitchen closet into a room. In that room, Jackson saw marijuana, drug paraphernalia, and heroin dilution tools. Mr. Penny, Jackson testified, stated that he used the room for mixing and storing drugs. Penny added that the room was fireproof, and that he believed it would go undetected in a police raid.

Through 1987, Jackson continued to purchase marijuana and cocaine from Mr. Penny. Jackson would pick up the drugs at Penny's various residences. By the fall of 1987, Jackson agreed to sell a kilogram of cocaine to Mr. Penny for $20,000. Jackson delivered the drugs, but was never paid. Jackson was arrested by police in December 1987, but his dealings with Penny did not cease. In December 1988, the lawyer Jackson hired to represent him offered to sell fifty kilograms of cocaine to him. The lawyer stated that his supplier was Mr. Penny. Thereafter, Jackson approached Penny directly to purchase cocaine, and arranged for some multi-kilogram purchases.

Mr. Penny, meanwhile, continued narcotics dealings with William Bauer, now released from prison. Penny supplied Bauer with cocaine through the fall of 1988. However, Bauer failed to resell the cocaine to pay Penny, and consequently, Penny ceased supplying Bauer.

### B. *Earlier Proceedings*

In 1989, the government began its investigation of suspected criminal activity by Mr. Penny. On April 5, 1989, the government seized approximately ten buildings, some automobiles and other assets in a civil forfeiture action. Searches of the seized assets produced firearms and ammunition, marijuana, cocaine, heroin, financial records that demonstrated that substantial money was used to remodel the Penny properties, as well as other records and assets that indicated that substantial sums of money were deposited in accounts or expended. Mr. Penny continued his drug transactions after the forfeiture, and, in July and September 1990, he conducted drug transactions with two different government informants.

The government filed a criminal indictment on June 9, 1992. It alleged that Mr. Penny had participated in a criminal conspiracy to distribute narcotics and had distributed narcotics, in violation of 21 U.S.C. §§ 841 and 846. On August 30, 1993, a jury trial was commenced, and on September 10, 1993 the jury found Penny guilty on both charges. After consideration of a motion and an amended motion for new trial, in August 1994, the court sentenced Penny to twenty-five years of imprisonment, to be followed by supervised release for the remainder of his life.

In the related forfeiture action, in which Clara Penny, but not Jonathan Penny, contested the civil forfeiture of the properties seized in 1989, the district court granted summary judgment on the merits to the government. *United States v. All Assets & Equip. of W. Side Bldg. Corp.*, 843 F.Supp. 377 (N.D.Ill.1993). We affirmed in part,[1] and remanded in part, holding that the government had probable cause to seize the property and that the district court appropriately denied Mrs. Penny's motion for continuance. We remanded the case to the district court to determine whether the holding of the Supreme Court of the United States in *United States v. James Daniel Good Real Property*,

---

1. *United States v. All Assets & Equip. of W. Side*   *Bldg. Corp.*, 58 F.3d 1181 (7th Cir.1995).

—— U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993), required that Clara Penny recover damages for the lost use of her property between the initial seizure and the adversary hearing.

## II

## ANALYSIS

Mr. Penny raises a number of issues on appeal. He submits that his conviction must be reversed because his criminal prosecution followed a separate civil forfeiture action, and thus subjected him to double jeopardy. Mr. Penny also submits that there existed insufficient evidence to support a conviction of conspiracy to distribute narcotics. In addition, he raises three evidentiary issues that, he contends, constitute reversible error. First, Mr. Penny avers that the trial court erred by allowing the admission of evidence of Mr. Penny's unexplained wealth. Second, Mr. Penny contends that a statement by a government agent improperly bolstered the testimony of a drug-dealer-turned-government-informant. Lastly, Mr. Penny claims that he was unfairly prejudiced by the erroneous admission of testimony of a United States Marshal, who was not qualified as an expert, yet testified about the use of coffee beans in door frames by drug dealers. We consider each contention in turn.

### A. *Double Jeopardy*

Mr. Penny submits that his criminal conviction should be reversed on the ground that such a conviction constitutes double jeopardy because the government had seized his assets in a prior civil forfeiture action brought in April 1989. Mr. Penny did not contest the civil forfeiture action, and in August 1990, the court entered a default judgment.

### 1.

■ We begin our evaluation of this double jeopardy claim by noting that Mr. Penny failed to raise this issue in the district court.

We therefore must determine, as an initial matter, whether Mr. Penny waived his right to object. In *United States v. Buonomo,* 441 F.2d 922, 924 (7th Cir.), *cert. denied,* 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971), we stated that "[c]onstitutional immunity from double jeopardy is a personal right which if not affirmatively pleaded at the time of trial will be regarded as waived." More recently the Supreme Court of the United States has clarified, with far more precision, the appellate treatment of issues not raised in the district court. *See United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). *Olano* makes clear that a defendant waives a right when there is the "intentional relinquishment or abandonment of a known right." *Id.* at ——, 113 S.Ct. at 1777 (citations and quotations omitted). When a right is waived, it is not reviewable, even for plain error. *Id.* at ——, 113 S.Ct. at 1776. By contrast, the simple failure to assert a right—forfeiture—is distinct from an intentional act—waiver. A forfeiture is reviewable under a plain error standard.

We agree with our colleagues in the Fourth Circuit, *see United States v. Jarvis,* 7 F.3d 404, 409–10 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1200, 127 L.Ed.2d 549 (1994), that failure to assert the double jeopardy defense in the trial court constituted a forfeiture. We can review such a claim, therefore, for plain error.

### 2.

Although we may review Mr. Penny's former jeopardy claim, we must conclude that, under the established case law of the circuit, Mr. Penny cannot seek protection from prosecution in this defense. Mr. Penny failed to file a claim, individually, in the forfeiture action, and that claim was decided eventually on default judgment in 1990.[2]

The Double Jeopardy Clause of the Fifth Amendment has been interpreted to protect an individual from three types of abusive prosecution: a second prosecution for the

---

**2.** As noted earlier, Clara Penny, and the Pennys' business, West Side Building Corp., were the only two parties that contested the civil forfeiture proceeding. *See United States v. All Assets & Equip. of W. Side Bldg. Corp.,* 58 F.3d 1181 (7th Cir.1995). Jonathan Penny "failed to file a claim on the property; thus the court entered a default decree of forfeiture as to his interests in the seized properties on August 15, 1990." *Id.* at 1193 n. 6.

same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Jackson,* 983 F.2d 757, 768 (7th Cir.1993); *see United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); *see also United States v. Dixon,* — U.S. —, —, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993). Consequently, Supreme Court precedent has indicated that parallel civil and criminal proceedings for the same offense may violate the Double Jeopardy Clause's prohibition against successive punishments for the same offense. *See Department of Revenue v. Kurth Ranch,* — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (holding that imposition of criminal sanction followed by the imposition of a civil post-forfeiture tax on illegal drugs is a violation of the Double Jeopardy Clause); *Halper,* 490 U.S. 435, 109 S.Ct. 1892 (1989) (holding that civil penalties imposed after criminal punishment can constitute a violation of the Double Jeopardy Clause of the Fifth Amendment); *cf. Austin v. United States,* — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (holding that civil forfeiture is punishment for purposes of triggering the Eighth Amendment's excessive fines clause). The circuits that have considered the Court's pronouncements have not agreed to their applicability.[3]

■ This case does not require that we determine whether these recent pronouncements from the Court afford Mr. Penny protection. In *United States v. Torres,* 28 F.3d 1463, 1465–66 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), this court held that an individual could not be placed in former jeopardy if, having received notice of the pending forfeiture proceeding, he did not make a claim to ownership of the assets. Thus, Mr. Penny's criminal prosecution was constitutionally permissible under the Fifth Amendment. *Torres,* 28 F.3d at 1465–66; *see also Serfass v. United States,* 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975) (holding that jeopardy had not attached when district court dismissed the indictment because petitioner had not been put to trial). It is irrelevant that Mr. Penny believes the forfeiture action was directed toward him; he failed to assert an interest in the property at the forfeiture proceeding and therefore cannot invoke the protections of the Fifth Amendment Double Jeopardy Clause.

### B. *Sufficiency of the Conspiracy Evidence*

Mr. Penny alleges that his conspiracy to distribute narcotics conviction should be reversed because the indictment did not identify other members of the conspiracy and because the evidence did not support a finding that Penny made an agreement with any other person to distribute narcotics. In reviewing such a submission, we owe great deference to the finding of the jury. We must determine whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found, beyond a reasonable doubt, the essential elements of the crime. *United States v. Donovan,* 24 F.3d 908, 913 (7th Cir.1994). We shall overturn a jury verdict "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Rosalez–Cortez,* 19 F.3d 1210, 1215 (7th Cir.1994) (citations and quotations omitted).

■ To demonstrate a conspiracy to distribute narcotics, the government need present evidence only that an agreement existed between two people; no other coconspirators need be identified in an indictment. *United States v. Williams,* 31 F.3d 522, 525 (7th Cir.1994); *see United States v. Kramer,* 711

---

**3.** If Mr. Penny had entered the civil forfeiture proceeding, it is unclear whether he would have been subjected to double jeopardy. The Second and Eleventh Circuits have ruled in drug forfeiture cases that the Double Jeopardy Clause does not bar both a criminal prosecution and a parallel civil forfeiture action because the two efforts constitute a single coordinated prosecution. *See*

*United States v. 18755 N. Bay Rd.,* 13 F.3d 1493 (11th Cir.1994); *United States v. Millan,* 2 F.3d 17 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 922, 127 L.Ed.2d 215 (1994). The Ninth Circuit has rejected this reasoning. *See United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994).

F.2d 789, 796 (7th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983); *United States v. Nason,* 9 F.3d 155, 159 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1331, 127 L.Ed.2d 678 (1994). The evidence presented may be circumstantial as well as direct. *Jackson,* 983 F.2d 757, 766 (7th Cir.1993); *see United States v. Williams,* 858 F.2d 1218, 1221 (7th Cir.1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989).

■ The record fully supports the finding of a conspiracy. It supports a finding that Mr. Penny both sold and bought cocaine and marijuana from Andre Jackson in 1987–88. Mr. Penny also sold his cocaine through William Bauer, another drug dealer. The record also indicates that Mr. Penny conspired with other named and unnamed individuals. Although Mr. Penny contends that his drug dealings are better classified as individual, isolated "buyer-seller" relationships, rather than a conspiracy, we cannot accept this proposition. This court has stated that the mere sale of narcotics by an individual cannot support a conviction for conspiracy without further evidence. *United States v. Lechuga,* 994 F.2d 346, 349 (7th Cir.) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). However, we have also held that "[e]vidence of frequent and repeated transactions, especially when credit arrangements are made, can support a conspiracy conviction." *United States v. Plescia,* 48 F.3d 1452, 1459 (7th Cir.1995), *petition for cert. filed,* (U.S. May 30, 1995) (No. 94–9447); *see United States v. Dortch,* 5 F.3d 1056 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994). Mr. Penny primarily sold narcotics to individuals, with whom he worked consistently and closely, for redistribution. The jury was entitled to determine whether Mr. Penny had an ongoing relationship with other members of the alleged conspiracy that would support the conclusion that he directed a narcotics distribution scheme. We cannot agree that the jury's conclusion was unsupported by the evidence of record. Here, testimony establishes that numerous transactions were completed. The evidence permitted the jury to conclude that there was prolonged cooperation among the actors, including the "front-ing" of cocaine. Such an arrangement implies "something more than a series of spot dealings at arm's length between dealers who have no interest in the success of each other's enterprise." *Dortch,* 5 F.3d at 1066 (citing *Lechuga,* 994 F.2d at 349–50).

## C. *Evidence of Wealth*

■ Evidence of unexplained wealth is probative and therefore admissible if it "creates a reasonable inference of the defendant's involvement in the drug conspiracy or trafficking." *United States v. Davis,* 789 F.Supp. 1130, 1132 (D.Kan.1992); *see also United States v. Marrinson,* 832 F.2d 1465, 1472 (7th Cir.1987); *United States v. Figueroa,* 976 F.2d 1446, 1454 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1346, 122 L.Ed.2d 728 (1993); *cf. United States v. Hogan,* 886 F.2d 1497, 1507 (7th Cir.1989) (holding in bribery context that evidence of wealth "may be admissible to establish that a person engaged in a cash-intensive criminal enterprise, even if there is another explanation for the extra money"); *United States v. Edwards,* 885 F.2d 377, 390 (7th Cir.1989) (holding in forfeiture context that "where a defendant's verifiable income cannot possibly account for the level of wealth displayed and where there is strong evidence that the defendant is a drug trafficker, then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds"). The prosecution may present the wealth evidence as long as other evidence, mainly that the wealth was not derived from legitimate sources, is presented to support the charge of narcotics distribution. *Davis,* 789 F.Supp. at 1132. This evidence, however, must relate to wealth acquired during the period in which the narcotics trafficking occurred. *United States v. Towers,* 775 F.2d 184, 187–88 (7th Cir.1985); *see Marrinson,* 832 F.2d at 1472; *cf. United States v. Zarintash,* 736 F.2d 66, 71–72 (3d Cir.1984).

Mr. Penny submits that evidence of his accumulated wealth was erroneously admitted at trial because the evidence presented was of assets acquired before the time that he allegedly distributed narcotics. Specifically, Mr. Penny alleges that the majority of

the evidence of wealth introduced by the government concerned assets acquired previous to 1987, the date when, Mr. Penny submits, his trafficking activities began. We review this claim for "plain error" because Mr. Penny failed to assert this claim at the trial court. Under such a standard, Mr. Penny must demonstrate that there was error, that the error was plain, that the error affected his substantial rights, and that the error seriously affected the fairness, integrity or public reputation of the judicial proceedings. *United States v. Olano,* —— U.S. ——, ——–——, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993); *see United States v. Davis,* 15 F.3d 1393, 1407 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 250, 130 L.Ed.2d 171 (1994); *United States v. Carroll,* 871 F.2d 689, 692 (7th Cir.1989). Mr. Penny cannot meet this burden.[4]

■ In this case, the government presented clear evidence that Mr. Penny had purchased and sold narcotics beginning in 1984. For example, Mr. Penny related to Andre Jackson in 1983 or 1984 that his significant increase in income was attributable to the heroin sales he was conducting. Also, in 1984, Mr. Penny had related to his cell mate in East Moline Correctional Center, William Bauer, that he made a great deal of money selling cocaine and heroin. In fact, while incarcerated with Bauer, Mr. Penny arranged a drug deal using one of his dealers he had consistently employed in the past, LaVada Davis. Thus, the evidence of the accumulated wealth of Mr. Penny was properly admitted, and no error was committed.[5] The record supports the conclusion that Mr. Penny had sold narcotics prior to 1984, and had been involved in a conspiracy to distribute narcotics since, at the latest, 1984.

### D. *Bolstering Testimony*

■ Mr. Penny further asserts that a government case agent, Lawrence Evans, prejudicially bolstered the testimony of the main government witness, Andre Jackson, when he stated, in response to a question concerning the outcome of Mr. Jackson's cooperation in unrelated proceedings, "We seized a lot of property, a lot of assets, arrested some people. People were convicted." R. 103–6 at 758. As Mr. Penny's counsel notes, this objection was not advanced in the district court, and therefore the claim must be reviewed under the plain error standard of review.

This statement, assuming arguendo that it can be characterized as bolstering the credibility of Jackson, was fully permitted. Mr. Penny's counsel had attacked the credibility of Andre Jackson; the government therefore was entitled to rehabilitate Mr. Jackson's testimony by asking another witness the results of Mr. Jackson's cooperation with investigators. "Several circuits have held that evidence of cooperation on other matters is admissible to justify a cooperation agreement and to rebut allegations of bias." *United States v. Lochmondy,* 890 F.2d 817, 821 (6th Cir.1989); *see also United States v. Sanchez,* 790 F.2d 1561 (11th Cir.1986); *United States v. Martinez,* 775 F.2d 31 (2d Cir.1985); *United States v. Fusco,* 748 F.2d 996 (5th Cir. 1984). Under the common law and Federal Rule of Evidence 608(a), cross-examination attacks on a witness's credibility and character will open the door to bolstering testimony and argumentation. *See United States v. McKinney,* 954 F.2d 471, 478 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992); *Lochmondy,* 890 F.2d at 822.

We also note that Agent Evans' statement did not suggest that Mr. Jackson's cooperation had led to the conviction of people related to Mr. Penny and his drug distribution enterprise. Accordingly, Evans' testimony did not implicate the primary reason for excluding evidence from trial concerning other individuals' convictions: "to avoid the possibility that a jury may infer [Mr. Penny's]

---

4. "[T]here is no miscarriage of justice if the defendant's guilt is so clear that he would certainly have been convicted even if the error had never been committed." *United States v. Windsor,* 981 F.2d 943, 946 (7th Cir.1992) (citations and quotations omitted).

5. We note that if evidence of accumulated wealth is properly admitted after a narcotics distribution scheme is established, a defendant's objection to the introduction of the wealth evidence "goes to the weight rather than the admissibility of the evidence." *United States v. Towers,* 775 F.2d 184, 188 (7th Cir.1985).

guilt because he associated with guilty people." *United States v. Davis*, 838 F.2d 909, 920 (7th Cir.1988).

■ Even assuming that Agent Evans' testimony was prejudicial, it most certainly did not constitute prejudicial error. It cannot be posited plausibly that such a terse statement had a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986); *see* Fed.R.Crim.P. 52. No plain error consequently exists.

### E. Coffee Beans

Mr. Penny also alleges that he was unfairly prejudiced when the district court allowed Deputy United States Marshal James DeVito to testify that drug dealers place coffee beans in door frames in order "to throw off the dogs for the scent of drugs or cocaine." R. 103–6 at 818. Mr. Penny objected to the testimony at trial. He submitted that Marshal DeVito was not qualified as an expert in narcotics investigations, and thus did not possess special knowledge concerning the use of coffee beans by drug dealers. We review this claim under the abuse of discretion standard. We therefore review the determination of the district court with great deference. We shall find reversible error only if the district court's decision is not "among those options from which one could have expected the court to choose on the basis of this record." *Raines v. Shalala*, 44 F.3d 1355, 1362 (7th Cir.1995); *see United States v. Koen*, 982 F.2d 1101, 1114 (7th Cir.1992) (stating that a court does not abuse its discretion when its decision "is within the range of options from which one could expect a reasonable trial judge to select").

■ Initially, we note that there is nothing improper with eliciting testimony from law enforcement officers concerning the techniques and methods used by criminals if it is plainly within that testifying officer's area of knowledge. Fed.R.Evid. 702, 703. Here, Marshal DeVito was relying on his experiences in three prior drug investigations in which he had observed the use of coffee beans in door frames. Our colleagues in the Second Circuit have stated that, in

fact, "[i]t is not improper to elicit expert testimony from an officer who is a fact witness, even if he was not formally qualified as an expert at trial." *United States v. Matos*, 905 F.2d 30, 34 (2d Cir.1990).

■ It is possible that a witness testifying both as a fact witness and an expert witness may blur these two very different roles and consequently increase the possibility that the jury will not understand its function in evaluating the evidence. *See United States v. Foster*, 939 F.2d 445, 453 (7th Cir. 1991) (citations omitted). We note that the district court was sensitive to the need to prevent any jury confusion that could have been engendered by Marshal DeVito's testimony as both an eyewitness and an "expert" during the course of the same trial. At a sidebar conference held during Marshal De-Vito's cross-examination, the district court informed defense counsel that she was entitled to ask "what the basis for [his] belief was." R. 103–6 at 817–19. The court also acknowledged that, in relation to jury perception, it would "obviously" be a mistake for the government to introduce evidence, such as this, that is not credible. *Id.* As such, any prejudicial concerns were addressed by defense counsel's opportunity to use cross-examination to counter such testimony. *See Foster*, 939 F.2d at 453. Mr. Penny's attorney, though, opted not to explore the statement in any manner.

In sum, the small impact of the coffee bean statement in light of the wealth of evidence presented to the jury of Mr. Penny's narcotics trafficking, in combination with the appropriate handling of Marshal DeVito's statement by the district court, militates in favor of finding that there was no unfair prejudice to Mr. Penny. Under these circumstances, we cannot say that the district court's decision was an abuse of discretion.

### Conclusion

For the foregoing reasons, we affirm the conviction of Mr. Penny.

AFFIRMED.