In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1513

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VERNARD L. GREEN, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:98 CR 74--Rudy Lozano, Judge.

Argued December 4, 2000--Decided July 25, 2001


   Before Flaum, Chief Judge, and Diane P.
Wood and Williams, Circuit Judges.

   Williams, Circuit Judge.  A jury
convicted Vernard L. Green, Jr., of
distributing crack cocaine, conspiracy to
distribute crack cocaine, and using a
communication device in connection with
the conspiracy and distribution.
Greenappeals, raising multiple alleged
evidentiary and sentencing errors by the
district court and asserting that the
evidence was insufficient to support his
conviction. We affirm.

I

   Vernard Green's problems began when the
Gary Response Investigative Team (GRIT),
a task force of federal and state law
enforcement officers, targeted for
investigation one of Green's customers,
Armondo Guzman, whom they suspected of
trafficking in drugs in Gary, Indiana.
GRIT enlisted the help of Danny Cox, an
informant who had cooperated in other
GRIT investigations after GRIT caught him
selling cocaine to undercover agents.

   GRIT asked Cox to attempt to make a
controlled purchase from Guzman, and on
April 10, 1998, Cox went to Guzman's home
and asked for an ounce of crack cocaine.
Guzman said he would have to contact his
source, and placed a telephone call. A

short time later, an individual arrived and gave the cocaine to Guzman, who then sold it to Cox. The GRIT officers conducting surveillance were too far away to see who delivered the cocaine to Guzman.

Several days later, Lieutenant Huttle and two other GRIT officers arrested and questioned Guzman. According to Huttle's written report of that interview, Guzman identified a man known as "Butter" as his source of cocaine. Guzman told the agents that he purchased cocaine from "Butter" about 100 times, usually in quantities of either an eighth of an ounce or an ounce.

Vernard Green was then questioned by three GRIT officers, including Indiana State Trooper John Jefferson, about the events on April 10. According to Jefferson's report of that interview, Green admitted that in response to Guzman's page, he delivered crack cocaine to Guzman's house. Green identified his source as John Vinson, and agreed to try to make a controlled purchase of crack from him. Although he placed a call to Vinson and identified himself as "Butter," he refused to give any further cooperation. He was arrested and indicted on charges of distributing crack cocaine, conspiracy to distribute crack cocaine, and using a communication device in connection with the conspiracy and distribution.

At trial, Cox and Guzman identified Green as the one who made the April 10 delivery to Guzman. Another witness, Clifton Rock, testified that Green was his source for cocaine, and testified that he also saw Green sell drugs to Herman Hicks, Ann Kelly, and Vincent Hill. Three GRIT agents testified that Green had admitted to them that in April 1998 he delivered an ounce of cocaine to Guzman's house in response to Guzman's page, and that Vinson was Green's source. When Green took the stand, he stated that he went to Guzman's house in April in response to Guzman's page, but he denied delivering crack cocaine, making incriminating statements to the GRIT officers, and any involvement with Vinson. A jury convicted Green on all three charges.

At sentencing, the trial judge found Green responsible for more than 500 grams

of crack cocaine, based in large part on Guzman's statement about his history of purchases from Green. The court increased Green's offense level based on its determination that Green had committed perjury during the trial, and denied Green's request for a downward departure based on his employment and family circumstances. The court sentenced Green to concurrent sentences of 235 months' imprisonment on the first two counts (conspiracy and distribution) and 48 months on the third (using a communication device to facilitate the conspiracy and distribution).

## II

### A

Green argues that his conviction should be reversed for four reasons. First, Green contends that the district court erred in admitting, as past recollection recorded, law enforcement officers' written summaries of their interviews with Green and Guzman. He challenges the admission of the reports and the statements attributable to Green and Guzman within those reports. Second, he claims that the government improperly bolstered Cox's credibility by eliciting testimony about Cox's cooperation in other prosecutions. Third, he argues that testimony concerning his prior drug transactions was inadmissible under Federal Rule of Evidence 404(b). Finally, Green claims that the evidence was insufficient to support his convictions. We examine each of these contentions in turn.

1. The officers' written summaries.

The district court allowed Trooper Jefferson to read to the jury the written summary he prepared of his interview of Green, and allowed Lieutenant Huttle to read to the jury his summary of the interview of Guzman. Both written summaries are the officers' out-of-court declarations, offered to prove the matter asserted in them, so are hearsay. See Fed. R. Evid. 801(c). The district court admitted those summaries under Federal Rule of Evidence 803(5), the hearsay exception for past recollection recorded, which allows memoranda or records meeting the criteria of the Rule to be read to

the jury, but not received as an exhibit. Green made a timely objection to the admission of the reports, so our review is for abuse of discretion. United States v. Lewis, 954 F.2d 1386, 1390 (7th Cir. 1992)./1

Green first contends that Jefferson's interview summary does not meet the criteria of Rule 803(5) because Jefferson did not prepare the summary until 11 days after his interview with Green. Rule 803(5) requires that the memorandum be made by the witness "when the matter was fresh in the witness' memory," but we have declined to adopt any bright-line rule to measure whether a particular delay is too long. Lewis, 954 F.2d at 1394. Instead, we have held that the trial court may consider the lapse of time along with other circumstances that may be relevant in determining the likelihood that the witness had an accurate memory of the event at the time the record was prepared. Id. (citing United States v. Senak, 527 F.2d 129, 141-42 (7th Cir. 1975)). Green has not identified any relevant circumstances bearing on the likelihood that Jefferson's memory was inaccurate, other than the delay between the interview and the written report, and we do not believe that an 11-day delay--in and of itself-- makes the interview so remote that Jefferson could not have accurately recalled it. See Senak, 527 F.2d at 141 (three-year delay between the events and the creation of the memorandum not excessive under the circumstances); United States v. Smith, 197 F.3d 225, 231 (6th Cir. 1999) (15-month delay); United States v. Patterson, 678 F.2d 774, 779 (9th Cir. 1982) (10-month delay). Hence, the district court did not err in determining that the report prepared 11 days after the interview qualified as Jefferson's past recollection recorded.

Green next contends that the assertions attributed to Guzman and Green within the reports should be excluded because he and Guzman did not adopt the reports. We have held that when a witness's statement is recorded by another, both the witness and the one transcribing the statement must testify as to the accuracy of the report to establish that the statement is the witness's past recollection recorded under Rule 803(5). United States v. Schoenborn, 4 F.3d 1424, 1427-28 (7th

Cir. 1993) (citing United States v. Williams, 951 F.2d 853, 858 (7th Cir. 1992)). So, if Green and Guzman had testified and affirmed the report's accuracy, the assertions attributed to them would have been admissible under Rule 803(5). See Schoenborn, 4 F.3d at 1428.

However, adoption of the assertions by Green and Guzman is not required if there is another basis for admitting them. This is because statements such as these that comprise multiple levels of potential hearsay are admissible if each part is admissible. See Fed. R. Evid. 805; United States v. Severson, 49 F.3d 268, 271-72 (7th Cir. 1995). The government contends that the assertions attributed to Green and Guzman (the "internal" hearsay) fall within the categories of out-of-court statements defined as non-hearsay by Rule 801(d), even though offered to prove the truth of the matter asserted. We agree that the assertions attributable to Green in Jefferson's report are classic admissions and not hearsay under Rule 801(d)(2)(A). The court did not err in allowing Jefferson's report to be read to the jury.

As to the assertions attributed to Guzman in Huttle's report, the government offered those as Guzman's prior consistent statements. A statement is not hearsay, and admissible as a prior consistent statement under Rule 801(d)(1)(B), if it meets the following four requirements:

1) the declarant testifies at trial and is subject to cross-examination; 2) the prior statement is consistent with the declarant's trial testimony; 3) the statement is offered to rebut an express or implied charge of recent fabrication or improper motive; and, 4) the statement was made before the declarant had a motive to fabricate.

United States v. Stoecker, 215 F.3d 788, 791 (7th Cir. 2000) (quoting United States v. Fulford, 980 F.2d 1110, 1114 (7th Cir. 1992))./2

Putting aside the first requirement for a moment, we conclude that the district court was within its discretion in determining that Guzman's statements to

Huttle were admissible under Rule 801(d)(1). The statements were consistent with Guzman's trial testimony, and were offered to rebut Green's counsel's attempt in cross-examination to show that, because of his plea agreement, Guzman had a motive to fabricate. See Stoecker, 215 F.3d at 790. Green argues on appeal that the fourth requirement of Rule 801(d) (1)(B) was not met because Guzman's statement to Huttle was made after he was arrested, and therefore Guzman had a motive to fabricate at the time the prior statement was made. Because this argument was not raised until his reply brief, it is waived. Wright v. United States, 139 F.3d 551, 553 (7th Cir. 1998); United States v. Feinberg, 89 F.3d 333, 340-41 (7th Cir. 1996)./3

Returning to the requirement that the declarant be available for cross-examination, Green contends that it was error to admit Guzman's prior statement after the conclusion of Green's cross-examination of Guzman and during the tes timony of Lieutenant Huttle. In United States v. West, 670 F.2d 675, 687 (7th Cir. 1982), we interpreted Rule 801(d) (1)(B)'s requirement of cross-examination to mean that the out-of-court statement must be elicited through the declarant, and not through a third party to whom the declaration was made. The government asks us to reconsider West, observing that no other circuit requires that prior consis tent statements be admitted through the declarant.

At the time West was decided, we acknowledged that our interpretation of Rule 801(d)(1)(B) differed from the interpretation of six other circuits that permit a third party to testify about another witness's prior consistent statement, so long as the witness who made the out-of-court statement is available for cross-examination at some time during the trial. Id. at 686 (citing United States v. Provenzano, 620 F.2d 985, 1000-02 (3d Cir. 1980); United States v. Dominguez, 604 F.2d 304, 311 (4th Cir. 1979); United States v. Allen, 579 F.2d 531, 532 (9th Cir. 1978); United States v. Lanier, 578 F.2d 1246, 1255-56 (8th Cir. 1978); United States v. Zuniga-Lara, 570 F.2d 1286, 1287 (5th Cir. 1978); United States v. McGrath, 558 F.2d 1102, 1107 (2d Cir. 1977)). In the

nineteen years since West was decided, our interpretation has not garnered support. None of the remaining circuits has followed West, leaving us a "minority of one." United States v. Montague, 958 F.2d 1094, 1099 (D.C. Cir. 1992); see United States v. Hebeka, 25 F.3d 287, 291 (6th Cir. 1994); United States v. Piva, 870 F.2d 753, 758 (1st Cir. 1989); United States v. Griggs, 735 F.2d 1318, 1325-26 (11th Cir. 1984); United States v. Sutton, 732 F.2d 1483, 1493-94 (10th Cir. 1984); see also 30B Michael H. Graham, Federal Practice and Procedure, sec.7012 at 135 (2000) ("Where admissible, the prior consistent statement may be testified to by either the witness himself or any other person with personal knowledge of the statement.").

The justification we provided in West was that Rule 801(d)(1)(B) requires not only that the declarant generally be available for cross-examination, but that he be available for cross-examination about the statement. West, 670 F.2d at 686 (citing United States v. Guevara, 598 F.2d 1094, 1100 (7th Cir. 1979); United States v. Fearns, 501 F.2d 486, 489 (7th Cir. 1974)). But, as other courts have observed, this justification does not compel the limitation we imposed in West. See Montague, 958 F.2d at 1099; Hebeka, 25 F.3d at 292. Cross-examination about the statement can be accomplished whether or not the statement is introduced by the declarant; if the statement is elicited from a third party, the declarant may be recalled for further examination. Id. West thus goes beyond its justification and imposes a precondition for admissibility relating to the order and manner that evidence is presented, a precondition not contained in Rule 801(d)(1)(B). And although this limitation avoids having to recall the declarant and therefore may serve some benefit in terms of trial management, we think this consideration is better left to the discretion of the trial court. See Fed. R. Evid. 611(a).

That the requirement articulated in West is not contained in nor apparent from the Rule itself may explain why West has not been mentioned in later decisions of this court approving the admission of prior consistent statements that were elicited not from the declarant but from the person to whom the statement was made.

See United States v. Ruiz, 249 F.3d 643, 647-48 (7th Cir. 2001); Fulford, 980 F.2d at 1113-14; United States v. Monzon, 869 F.2d 338, 342-43 (7th Cir. 1989); United States v. Harris, 761 F.2d 394, 399 (7th Cir. 1985); cf. Christmas v. Sanders, 759 F.2d 1284, 1288-89 (7th Cir. 1985) (affirming, on other grounds and without reference to West, district court's rejection of prior consistent statement offered through a third party). These later decisions suggest to us that the limitation articulated in West is not well known and, lacking good justification, serves unnecessarily to trap the unwary.

We therefore believe that it is time to join our sister circuits and hold that Rule 801(d)(1)(B) does not bar the introduction of a prior consistent statement through the testimony of someone other than the declarant, so long as the declarant is available for cross-examination about the statement at some time during trial./4 There is no indication that Green was prevented from recalling Guzman for cross-examination about the assertions attributed to Guzman in Huttle's report, and because those assertions meet the other requirements for admission under Rule 801(d)(1)(B), the district court did not abuse its discretion in allowing Huttle's report to be read to the jury.

2. Evidence regarding Cox's prior cooperation.

Green also contends that the district court erred in permitting testimony about Cox's cooperation with the government's investigation and prosecution of two individuals unrelated to Green's case. He claims that this testimony was improper bolstering of Cox's credibility and barred by Federal Rule of Evidence 608(b).

We begin with a few general comments. First, "bolstering" is the practice of building up a witness's credibility before impeachment has been attempted. United States v. Lindemann, 85 F.3d 1232, 1242 (7th Cir. 1996); United States v. LeFevour, 798 F.2d 977, 983 (7th Cir. 1986). All of the testimony elicited by the government regarding Cox's cooperation in other investigations was in response to Green's earlier questions

of Agent Bookwalter, which were intended to suggest that Cox was "setting up" a number of people, including Green, in order to avoid prosecution for his own crimes. As a consequence, the government did not engage in improper bolstering when it introduced further evidence of Cox's cooperation to rebut Green's allegation of bias. See Lindemann, 85 F.3d at 1243; United States v. Penny, 60 F.3d 1257, 1264 (7th Cir. 1995); United States v. McKinney, 954 F.2d 471, 478 (7th Cir. 1992); see also United States v. Lochmondy, 890 F.2d 817, 821-22 (6th Cir. 1989).

Second, Federal Rule of Evidence 608(b) bars the use of extrinsic evidence of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility." Fed. R. Evid. 608(b). However, we have held that if evidence of the witness's cooperation in other investigations is directed at rebutting allegations of the witness's bias, and not at his character for truthfulness in general, the limitations of Rule 608(b) do not apply. Lindemann, 85 F.3d at 1243; see also United States v. Smith, 232 F.3d 236, 242-43 (D.C. Cir. 2000); United States v. Fusco, 748 F.2d 996, 998 (5th Cir. 1984). Instead, the evidence is governed by the relevance standard of Rule 402. Lindemann, 85 F.3d at 1243; United States v. Curry, 187 F.3d 762, 767 (7th Cir. 1999). The question, then, is whether the testimony of Cox's prior cooperation was relevant to the issue of Cox's bias, and if so, whether its probative value was substantially outweighed by the danger of unfair prejudice. See Lindemann, 85 F.3d at 1243; Curry, 187 F.3d at 767.

Turning to the specific testimony in this case, we note that Green made no objection at trial to the testimony that he now complains was improper (with one exception, which we will address in a moment), and our review is therefore for plain error. Penny, 60 F.3d at 1264. Agent Bookwalter (a member of the GRIT team who had worked with Cox) testified that the information provided by Cox in other investigations was "credible and reliable and consistent with" what the GRIT team observed. This testimony tends to make Green's theory of bias less probable and was therefore relevant. See Smith, 232 F.3d at 241 (stating that the

fact that the witness "has informed and testified truthfully in the past under his plea agreement certainly bears on his response to similar pressures and temptations in the present"). And although Green does not argue that the evidence was unduly prejudicial, we note that the jury had already heard almost identical testimony elicited during Green's cross-examination of Bookwalter. Given this context, we would be hard pressed to conclude that the testimony elicited by the government, even if unduly prejudicial if standing alone, had any affect on the outcome. See United States v. Napue, 834 F.2d 1311, 1324 (7th Cir. 1987); United States v. Mazzone, 782 F.2d 757, 763 (7th Cir. 1986). Therefore reversal is not warranted under plain error review. See Penny, 60 F.3d at 1265./5

Green did make a timely objection to Bookwalter's statement that the other trial in which Cox testified resulted in conviction, and so we review the district court's decision to admit that statement for abuse of discretion. Curry, 187 F.3d at 767. Green contends that the jury may not hear that the witness's cooperation resulted in convictions, relying on our decision in United States v. Napue, 834 F.2d 1311, 1324 (7th Cir. 1987), and the government concedes this point. However, in Napue, we did not hold that such testimony is never admissible. Instead, we considered whether a mistrial was warranted when a prosecutor made reference in closing argument to convictions that resulted from a witness's testimony in another case, despite the trial judge's earlier ruling barring the evidence on relevancy grounds. Id. The question there was whether the prosecutor's violation of the earlier ruling required reversal, and not whether the earlier ruling was correct or incorrect./6

But given the government's concession, we decline to explore the question of whether the district court abused its discretion in this case by admitting evidence of the convictions that resulted from Cox's testimony. Instead, we agree with the government that the error, if any, was harmless because of the overwhelming evidence of Green's guilt. See Fed. R. Crim. P. 52(a). The most significant evidence provided by Cox was

his identification of Green as the person who arrived at Guzman's home immediately before Guzman delivered the cocaine to Cox on April 10. But this identification was confirmed not only by Guzman's testimony, but by three GRIT agents who testified that Green confessed to that incident--testimony that Green does not challenge on appeal. Given this testimony, and other corroborating evidence, we find that even if it was error to admit testimony that Cox's cooperation in other cases resulted in convictions, the error was harmless. See Curry, 187 F.3d at 767; cf. Smith, 232 F.2d at 243.

3.  Evidence of Green's prior drug transactions.

Green next contends that the district court improperly admitted Clifton Rock's testimony that he purchased from Green an average of about 1 ounces of cocaine per week, and that he saw Green sell cocaine to other individuals, during a period ending more than a year before the conspiracy charged in this case. Evidence of other wrongs is admissible under Federal Rule of Evidence 404(b) if the evidence: (i) is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (ii) shows that the other act is similar enough and close enough in time to be relevant; (iii) is sufficient to support a finding that the defendant committed the other act; and (iv) has probative value not outweighed by the danger of unfair prejudice. United States v. Williams, 238 F.3d 871, 874 (7th Cir. 2001); United States v. Moore, 115 F.3d 1348, 1354 (7th Cir. 1997). Green contends that Rock's testimony fails all four prongs of this test.

As to the first prong of the test, we have held on numerous occasions that when a defendant is charged with a specific intent crime (here, conspiracy to distribute cocaine), evidence of the defendant's prior drug transactions may be relevant to show knowledge and intent--purposes distinct from simply showing the defendant's propensity for drug dealing. United States v. Jones, 248 F.3d 671, 675-76 (7th Cir. 2001); Williams, 238 F.3d at 875 n.1 and cases cited therein; United States v. Monzon, 869 F.2d 338, 344 (7th Cir. 1989). Green

argues that his theory was not that he lacked intent, but rather that he was not the person who delivered the drugs to Guzman. This distinction is irrelevant because the government must prove all elements of the crime, and therefore evidence probative of intent is relevant whether or not the defendant makes intent an issue. See Jones, 248 F.3d at 675; United States v. Kellum, 42 F.3d 1087, 1093 (7th Cir. 1994); Monzon, 869 F.2d at 344.

Whether the evidence meets the second prong of the test, similarity and proximity, is evaluated in relation to the purpose for which the evidence is offered. United States v. Ruiz, 178 F.3d 877, 880 (7th Cir. 1999); United States v. Torres, 977 F.2d 321, 326 (7th Cir. 1992). Where, as here, the evidence relates to prior drug sales of the same or similar type of drug, transactions ending 14 months before the charged crime are not too remote to be relevant to the defendant's knowledge and intent. See Ruiz, 178 F.3d at 880 (two years between offenses); United States v. Kreiser, 15 F.3d 635, 640 (7th Cir. 1994) (seven years).

Rock's testimony that he sold drugs to Green and saw Green sell drugs to others is sufficient to support a jury's finding that Green did in fact engage in that conduct, and therefore the third prong of the test is satisfied, notwithstanding Green's assertions about Rock's credibility. See United States v. Smith, 995 F.2d 662, 672 (7th Cir. 1993) (holding that uncorroborated direct testimony of an accomplice is sufficient for purposes of Rule 404(b) unless it is "incredible on its face or otherwise insubstantial").

Finally, as to the fourth prong, we find no error in the district court's determination that the evidence was not unfairly prejudicial when weighed against its probative value, particularly in light of the district court's instruction limiting the jury's consideration of the evidence to the narrow purpose for which it was offered. See United States v. Den berg, 212 F.3d 987, 994 (7th Cir. 2000); United States v. Brooks, 125 F.3d 484, 500 (7th Cir. 1997) (stating that "limiting instructions are sufficient to cure any potential prejudice resulting

from the admission of 404(b) evidence"). Thus, we find no abuse of discretion in the district court's decision to admit this evidence./7

4.  Sufficiency of the evidence.

  Green's final challenge to his conviction is that the trial evidence was insufficient to support his conviction, specifically, that there was insufficient evidence that it was Green who participated in the transactions with Guzman in April 1998. Challenges based on the sufficiency of the evidence are rarely successful. See United States v. Sanchez, 251 F.3d 598, 601 (7th Cir. 2001); United States v. Thornton, 197 F.3d 241, 253 (7th Cir. 1999). Our review is highly deferential to the jury and we will reverse "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." Penny, 60 F.3d at 1262 (citing United States v. Rosalez-Cortez, 19 F.3d 1210, 1215 (7th Cir. 1994)). Here, Green's admission of his participation to three law enforcement officers, as well as Cox's and Guzman's testimony, was more than sufficient to support the jury's verdict.

B

  We turn now to Green's three challenges to his sentence, specifically, the district court's calculation of drug quantity, its enhancement of the sentence for obstruction of justice, and its refusal to grant a downward departure for family circumstances and employment. We have examined each of these challenges and find them to be without merit. First, there was no clear error in the district court's calculation of drug quantity, which was supported by sufficiently reliable evidence, including Guzman's testimony and statements about his history of purchases from Green. See United States v. Durham, 211 F.3d 437, 444 (7th Cir. 2000); United States v. Clay, 37 F.3d 338, 344 (7th Cir. 1994). Second, the court was entitled to disbelieve Green's trial testimony, which was contrary to admissions he made to law enforcement officers and to the testimony of other witnesses. Therefore, we find no error in the court's finding that Green committed perjury, or its decision to

apply a sentencing enhancement for obstruction of justice. See United States v. Jones, 983 F.2d 1425, 1430-31 (7th Cir. 1993). Third, the district court declined to exercise its discretion in favor of Green, but recognized that it had discretion to depart downward based on family relationships and employment even though those factors are "not ordinarily relevant." See U.S.S.G. sec. 5H1.6. Accordingly, that decision is unreviewable on appeal. United States v. Jaderany, 221 F.3d 989, 997 (7th Cir. 2000); United States v. Guy, 174 F.3d 859, 861 (7th Cir. 1999); United States v. Prevatte, 66 F.3d 840, 843 (7th Cir. 1995).

III

   For the foregoing reasons, the judgment of the district court is Affirmed.

FOOTNOTES

/1 The government contends that Green made no objection at trial to the admission of Huttle's report as past recollection recorded, and therefore that our review is for plain error. We conclude, however, that Green's objections--while not a model of clarity--were adequate to preserve the issues that he is advancing on appeal regarding whether the assertions attributable to Guzman in Huttle's report are admissible as a prior consistent statement.

/2 Federal Rule of Evidence 801(d)(1) defines prior consistent statements as not hearsay if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. . . ."

/3 In any event, at the time Guzman made the statement, Guzman had not yet entered into a cooperation agreement with the government, and a reasonable person could have concluded that the motive to fabricate did not arise until the cooperation agreement. Therefore, Green cannot show that the court abused its discretion in determining that this requirement of Rule 801(d)(1)(B) was met. See Fulford, 980 F.2d at 1114; cf. United States v. Williams, 128 F.3d 1128, 1133 (7th Cir. 1997).

/4 Because this holding overrules part of our decision in West, this opinion has been circulated to all judges in regular active service in accor-

dance with Circuit Rule 40(e). No judge voted to hear the case en banc.

/5 The same is true for the testimony that the government later elicited from Cox, which simply confirmed the information already elicited by Green concerning Cox's cooperation in the earlier investigation.

/6 Green also relies on United States v. Taylor, 900 F.2d 779, 781 (4th Cir. 1990), which held that evidence of convictions in other cases in which the witness had testified was inadmissible under Federal Rule of Evidence 608(b). However, Taylor is distinguishable from this case because in Taylor, no impeachment based on bias was attempted, and therefore evidence of the witness's prior successful cooperation in other trials was irrelevant and improper bolstering. See United States v. Lindemann, supra, 85 F.3d at 1243.

/7 Green also complains that the government did not disclose, until the day before Rock testified, that he would say that he saw Green sell cocaine to Hicks, Kelly, and Hill. No objection was made to the timeliness or adequacy of the government's pretrial notice describing Rock's testimony, so our review of this point is for plain error. See United States v. Robinson, 110 F.3d 1320, 1325 (8th Cir. 1997). Green has not articulated how the allegedly inadequate or untimely notice affected his trial preparation or strategy nor has he demonstrated any prejudice from the single brief reference to Green's sales to Hicks, Kelly, and Hill. Consequently, he has not met his burden of demonstrating that the alleged error affected his substantial rights (i.e., affected the outcome) or affected "the fairness, integrity, or public reputation" of the trial, and we therefore cannot conclude that the alleged error warrants reversal. See United States v. Olano, 507 U.S. 725, 734 (1993); United States v. Mietus, 237 F.3d 866, 875 (7th Cir. 2001).