2024 IL App (4th) 230443

NO. 4-23-0443

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| AUNDERA L. GARDNER, | ) | No. 22CF164 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Justices Steigmann and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant Aundera L. Gardner appeals from his conviction and 20-year sentence for possession of a converted vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), unlawful possession of a firearm by a felon (720 ILCS 5/24-1.1(a) (West 2022)), unlawful possession of ammunition by a felon (*id.*), and harassment through electronic communications (*id.* § 26.5-3(a)(5)) for sending threatening text messages to Terriona White. On appeal, defendant argues that (1) the trial court erred by admitting statements by White under the forfeiture by wrongdoing exception to the hearsay rule, (2) his counsel was ineffective by failing to move to strike the testimony of a police officer regarding White's statements, and (3) his two convictions for unlawful possession of a weapon by a felon are void because the statute is facially unconstitutional under the second

amendment to the United States Constitution (see U.S. Const., amends. II, XIV). We disagree and affirm.

¶ 2                                    I. BACKGROUND

¶ 3                              A. The Body Camera Video

¶ 4        On February 13, 2022, defendant was living at White's apartment in Normal, Illinois, with their two children and White's daughter by another man. Defendant and White had an argument about White's expected $10,000 tax refund, which he wanted her to give him. She refused. Eventually, he went to his car and got a gun, which he put underneath his side of their bed. When he left to smoke a cigarette, she took the clip from the gun, wrapped it in a towel, and hid it in a clothes hamper.

¶ 5        When defendant took White's daughters to school the following morning, she fled with her son to a neighbor's apartment. After defendant returned to White's apartment, he sent her text messages threatening to kill her and demanding she return his clip. She called the police; one of the officers who responded to White's call was Christopher Nyman of the Normal Police Department.

¶ 6        Nyman was wearing a body camera that recorded his conversation with White about what had happened. The video includes the following exchange about a GMC Acadia parked outside of White's apartment:

> "OFFICER NYMAN: *** Does he have a license in Missouri?
>
> TERRIONA WHITE: No. He doesn't have a license at all, and the license plates on that truck[,] he stole them.
>
> OFFICER NYMAN: Okay.

TERRIONA WHITE: Somebody reported those license on his car, they—they—I'm pretty sure somebody has called them in and said that somebody took their license plates off their car. He just haven't gotten caught driving 'em yet. He hasn't got pulled over, but *** his auntie told me that he took those plates off somebody's car somewhere in Illinois and put 'em on that truck."

¶ 7    White gave Nyman consent to search her apartment; he found the clip in the clothes hamper, but the gun was not under the mattress, as White had said. The following day, White reported to the police that she had found the gun wrapped in a shopping bag in a plastic tub in her closet, so another officer came to retrieve the gun.

¶ 8    Defendant was arrested and charged with two counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)), one for the gun and one for the clip, and one count of possession of a converted vehicle (625 ILCS 5/4-103(a)(1) (West 2022)). A vehicle is "converted" for purposes of the latter statute if the person lawfully entitled to its possession has been wrongfully deprived of it (see Illinois Pattern Jury Instructions, Criminal, No. 23.35A (4th ed. 2000) (hereinafter IPI Criminal 4th)). Defendant was later charged with one count of harassment through electronic communications (720 ILCS 5/26.5-3(a)(5) (West 2022)) for sending the threatening text messages to White.

¶ 9                    B. White's Evasion of Service

¶ 10    The trial court set defendant's bond at $250,000. As a condition of bond, the court ordered defendant to have no contact with White and to stay away from her apartment. Defendant could not post the required $25,000 bond deposit, so he was detained in the McLean County jail. While incarcerated, he made several telephone calls to White, asking her to recant and say that the gun belonged to her and not him. White repeatedly refused, saying that she did not want to be

charged with unlawfully possessing the gun or with obstruction of justice, which her lawyer had told her were possible consequences of recanting.

¶ 11        On defendant's motion, his bond was reduced to $25,000 with the conditions that he live with his mother in Decatur, continue to have no contact with White, and stay away from her apartment. Defendant posted bond and filed a motion to remove the no-contact condition, attaching an affidavit from White saying that she had not requested the no-contact condition, wanted it to be lifted, and was not in fear of harm for herself if defendant had contact with her or went to her address. The trial court held a hearing, at which White testified that she was not afraid for her safety or her children's safety. The court removed the no-contact condition on April 6, 2022, and defendant began living with White at her apartment, rather than with his mother in Decatur.

¶ 12        The case proceeded to trial in December 2022. Before trial, the McLean County Sheriff's Office made 27 unsuccessful attempts to serve White with a subpoena and obtain her testimony at trial. The State moved *in limine* to admit some of White's February 14, 2022, statements to Nyman under the forfeiture by wrongdoing exception, asserting that its inability to serve White rendered her unavailable as a witness and that defendant's pressure on White constituted "wrongdoing that was intended to, and did, procure the unavailability of [White] as a witness." Ill. R. Evid. 804(a)(5), (b)(5) (eff. Jan. 1, 2011). After a hearing, the trial court found that the State had proven forfeiture by wrongdoing and granted the motion. Because the State did not move to admit the particular statements quoted above, the court neither ruled on their admissibility nor played that portion of the video for the jury.

¶ 13        C. Nyman's Testimony at Trial

¶ 14    To obtain a conviction for possession of a converted vehicle, the State was required to prove that (1) defendant possessed the vehicle, (2) defendant was not entitled to possess the vehicle, and (3) defendant knew that the vehicle was converted. 625 ILCS 5/4-103(a)(1) (West 2022); IPI Criminal 4th No. 23.36. Defendant stipulated to the first two propositions, but he challenged the third proposition at trial, arguing that he did not know the car was converted. The statute provides that the finder of fact is allowed, but not required, to "infer that a person exercising exclusive unexplained possession over a converted vehicle has knowledge that such vehicle is converted." IPI Criminal 4th No. 23.36A; see 625 ILCS 5/4-103(a)(1) (West 2022).

¶ 15    On the State's direct examination of Nyman, the State asked him about his investigation regarding the car as follows:

> "Q. On your way to the apartment as you're walking along the sidewalk towards her apartment on her building, d[id] you see a vehicle parked out in front of her apartment?
>
> A. Yes I d[id].
>
> Q. At the time—did it have any particular significance at that time?
>
> A. No it did not.
>
> Q. Later on did that car become significant?
>
> A. Yes it did.
>
> Q. Why did it become significant?
>
> A. Because Ms. White had told me that she believed the vehicle was stolen and had fictitious plates on it.
>
> Q. And based on that, later on did you then follow up on that?

A. I did."

Defense counsel did not object to Nyman's reference to what White had told him.

¶ 16        Later in its direct examination of Nyman, the State returned to Nyman's conversation with White as follows:

"Q. Then at some point in time after you seized the weapon did you turn your attention to that car?

A. I did.

Q. What did you do?

A. Ms. White told us that she believed the vehicle was stolen. It had different plates on it. I asked her what made her believe that. She said [defendant] showed up with it about a month ago, said he paid somebody $4,000—

MS. PATTON [(DEFENSE ATTORNEY)]: Objection Your Honor.

MR. SCHOENBEIN [(ASSISTANT STATE'S ATTORNEY)]: Judge I'll rephrase.

Q. Once she gave you the information, did you yourself do some follow up then?

A. I did.

Q. Did you check the plates with dispatch?

A. I did.

Q. Did they check to [the GMC Acadia] or to a different vehicle?

A. To a different vehicle."

Defense counsel did not state the grounds for her objection, obtain a ruling on her objection, or move to strike Nyman's testimony. Although the State purported to "rephrase" its question, it did

not withdraw its prior question or concede that Nyman's testimony up to that point was inadmissible.

¶ 17    The jury convicted defendant on all four counts against him, and the trial court imposed an aggregate sentence of 20 years' imprisonment.

¶ 18    This appeal followed.

¶ 19                                  II. ANALYSIS

¶ 20    Defendant argues that (1) the trial court erred by admitting statements by White under the forfeiture by wrongdoing exception to the hearsay rule, (2) his counsel was ineffective by failing to move to strike Nyman's testimony regarding White's statements, and (3) his two convictions for unlawful possession of a weapon by a felon are void because the statute is facially unconstitutional under the second amendment. We address each argument in turn.

¶ 21                          A. Forfeiture by Wrongdoing

¶ 22    Defendant argues that the trial court erred by allowing the State to introduce White's statements under the forfeiture by wrongdoing exception to the hearsay rule. Under this exception, the State was required to prove by a preponderance of the evidence that defendant "engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of [White] as a witness." Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011). We note there is no dispute that White was unavailable in that the State could not secure her testimony, despite its extensive efforts to serve her with a subpoena. See Ill. R. Evid. 804(a)(5) (eff. Jan. 1, 2011) (providing for a finding of unavailability on this basis); *People v. Chatman*, 2024 IL 129133, ¶ 44 (requiring the State to "demonstrate *** that reasonable, good-faith efforts were made to procure the witness's attendance").

¶ 23        We will overturn a trial court's finding that the State has proven forfeiture by wrongdoing only if that finding is against the manifest weight of the evidence, meaning " 'the opposite conclusion is clearly evident or *** the finding itself is unreasonable, arbitrary, or not based on the evidence presented.' " *People v. Peterson*, 2017 IL 120331, ¶ 39 (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). As we will explain, none of the trial court's findings are against the manifest weight of the evidence.

¶ 24                                1. *Engaging in Wrongdoing*

¶ 25        Defendant argues that the State failed to prove that he engaged in wrongdoing because there was no evidence that White was afraid of defendant, so she cannot have been intimidated into absenting herself from trial. However, there is no requirement that the defendant secure the witness's absence through threats or intimidation; the State needs only to "show that the defendant engaged in witness tampering or some type of conduct designed to *** thwart the judicial process." *In re Rolandis G.*, 232 Ill. 2d 13, 40 (2008) (citing *Giles v. California*, 554 U.S. 353, 359 (2008)); see *United States v. Jonassen*, 759 F.3d 653, 662 (7th Cir. 2014) (finding that pressuring a witness to recant constituted wrongdoing).

¶ 26        Here, the State showed that defendant repeatedly asked White to testify to something other than what she believed was the truth, even though he was forbidden from contacting her as a condition of his bond at that time. Violating a bond condition to encourage a witness to perjure herself is exactly the type of conduct that the forfeiture by wrongdoing exception is intended to remedy. *Rolandis G.*, 232 Ill. 2d at 40. Accordingly, the trial court's conclusion that defendant engaged in wrongdoing is not against the manifest weight of the evidence.

¶ 27                                    2. *Intending to Cause Unavailability*

¶ 28           Defendant further argues that the State failed to prove that his actions were intended to cause White's unavailability. Defendant's troubling argument is that he cannot be faulted for the witness's absence because, if she had done as he asked, she would have testified and perjured herself. Although there is authority to suggest that even pressuring a witness to testify falsely can satisfy the intent requirement (see *People v. Nelson*, 156 A.D.3d 1112, 1117 (N.Y. App. Div. 2017)), we need not reach the question here because the State was required only to show that defendant's wrongdoing "was motivated 'at least in part' by an intent to prevent her from testifying." *Peterson*, 2017 IL 120331, ¶ 50 (quoting *People v. Stechly*, 225 Ill. 2d 246, 272 (2007)); accord *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996) ("[T]he intent to deprive the prosecution of testimony need not be the [defendant's] *sole* motivation." (Emphasis in original.)). As such, our standard of review on appeal requires defendant to show that it is clearly evident from this record that the trial court should have found that he was not motivated *even in part* by an intent to prevent White from testifying. Defendant has not made such a showing.

¶ 29           As defendant points out in his brief, White was not afraid of him; in fact, she explicitly told him that she did not want him to serve a 10-year prison sentence for possessing the gun. At one point during his pressure campaign, she said to him, "There's got to be another way." He responded by saying to her, "There's no other way, man, it[']s either you or me. That'[s] a real hard decision. I know[,] man. It's you or me, either I'm going or you lose all your benefits." But defendant was wrong; White had three options: (1) take the stand and testify consistent with her earlier statement, bolstering the State's case and potentially exposing defendant to a long term of incarceration for possessing the gun, (2) take the stand and recant her earlier statement, potentially

opening herself up to criminal liability for obstruction of justice and for possession of the gun, or (3) avoid taking the stand altogether.

¶ 30       Defendant's repeated statements to White made the first and second options unappealing, which had the natural consequence of driving her to choose the third option. " 'The defendant is presumed to intend the natural and probable consequences of his acts ***.' " *People v. Dorsey*, 2016 IL App (4th) 140734, ¶ 34 (quoting *People v. Terrell*, 132 Ill. 2d 178, 204 (1989)); *cf. People v. Davis*, 2018 IL App (1st) 152413, ¶ 42 (imputing coconspirators' intent to silence a witness to the defendants under a theory of conspiracy liability). To be sure, defendant would clearly have *preferred* that White choose the second option over the third, but that does not change the fact that his overall intent was to avoid the first option. See *Houlihan*, 92 F.3d at 1279. Accordingly, the trial court's conclusion that defendant was motivated at least in part by an intent to cause White's unavailability is not against the manifest weight of the evidence.

¶ 31                              3. *Causing Unavailability*

¶ 32       Defendant finally argues that the State failed to prove that his conduct in fact caused White's unavailability. Of course, an absent witness cannot testify to explain her absence, so a causal connection "may be established by inference from circumstantial evidence." *People v. Krisik*, 2018 IL App (1st) 161265, ¶ 55; see *People v. Melchor*, 362 Ill. App. 3d 335, 355 (2005) (finding no causal connection when "[the witness's] death from a drug overdose [wa]s not a logical outgrowth, foreseeable result, or legitimate consequence of [the] defendant's flight [from prosecution]"), *vacated on other grounds*, 226 Ill. 2d 24 (2007). According to defendant, no causal connection exists between his conduct and White's failure to testify because "the basis for her decision was her contact with a lawyer and subsequent belief that her possession of the firearm would subject her to felony charges."

¶ 33    White's conversations with defendant do suggest that she avoided recanting in part because the inescapable conclusion from her recantation would have been that the gun in her apartment was hers, even though she implied she could not lawfully possess a gun. However, she could have avoided this outcome by testifying to what she clearly believed was the truth: the gun was defendant's. It was defendant, not White's lawyer, who discouraged her from taking this course of action; as such, the trial court could fairly infer that defendant's statements discouraging White from testifying *truthfully* were what caused her to avoid testifying *altogether*.

¶ 34    Furthermore, White's belief about possible felony charges was not *subsequent* to defendant's pressure campaign; after she mentioned it to him on a jail call, he said, "still with that felony you can get it expunged in seven years, you would just not be able to get some of things that you already not, you don't f*** want, you never want, you never going to f*** go get a gun anyway." Minutes later, she insisted that there had to be "another way" out of the situation. In other words, her decision to evade service was based not just on the possibility of felony charges but also on his expressed desire for her to incur those charges instead of him. The trial court could fairly infer that defendant caused White to avoid testifying by selfishly escalating, rather than reducing, the pressure on her after she mentioned her lawyer's advice about possible felony charges.

¶ 35    Defendant also points to a lack of evidence that he explicitly instructed White to absent herself by evading service. However, there was no requirement for the State to prove that he caused her to take any particular action to become unavailable, merely that he "procure[d] the unavailability of [White] as a witness." Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011). Indeed, the State will often be unaware of what precise steps were taken to procure a witness's absence; if the State knew, it could presumably trace those steps to obtain the witness's presence. Accordingly, the trial

court's conclusion that defendant caused White's unavailability is not against the manifest weight of the evidence.

¶ 36                    B. Counsel's Failure to Move to Strike Testimony

¶ 37        Defendant claims that his counsel was ineffective for failing to move to strike Nyman's testimony about his conversation with White. The sixth amendment to the United States Constitution guarantees defendants the right to the assistance of counsel for their defense (U.S. Const., amends. VI, XIV), and " 'the right to counsel is the right to the effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). Under *Strickland*, a defendant alleging that his counsel was ineffective has the burden of showing both deficiency and prejudice. *Id.* at 687. To satisfy the deficiency prong, "the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). To satisfy the prejudice prong, "[t]he defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *People v. Houston*, 229 Ill. 2d 1, 4 (2008). Because a defendant must satisfy both prongs to prevail, courts need not "address both [prongs] of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *Evans*, 186 Ill. 2d at 94.

¶ 38        We will consider a claim of ineffective assistance of counsel for the first time on direct appeal unless the claim depends on facts not in the record on appeal. See *People v. Veach*, 2017 IL 120649, ¶¶ 46-48. Here, the record is adequate for a consideration of deficiency because defendant's argument relies on materials in the record, even though those materials were not

introduced at trial. Our standard of review is *de novo*. *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 40.

¶ 39 Even when damaging testimony is improperly admitted, counsel's decision to forgo a motion to strike the testimony may be the product of sound trial strategy because making the motion could draw the jury's attention to the damaging testimony. See *People v. White*, 2011 IL App (1st) 092852, ¶ 75; *People v. Leger*, 149 Ill. 2d 355, 396 (1992); see also *People v. Evans*, 209 Ill. 2d 194, 221 (2004) (noting that the significance of inadmissible testimony can be diffused when counsel forgoes an objection). As such, we will find counsel's decision deficient only "where *no* reasonably effective defense attorney, confronted with the circumstances of the defendant's trial, would [have] engage[d] in similar conduct." (Emphasis added.) *People v. Watson*, 2012 IL App (2d) 091328, ¶ 24. Furthermore, counsel cannot be ineffective for failing to make a futile motion, such as a motion to strike properly admitted testimony. See *People v. Smith*, 2014 IL App (1st) 103436, ¶ 64.

¶ 40 Relying principally on the portions of the body camera video that were not introduced into evidence, defendant argues that no reasonably effective defense attorney would have failed to move to strike Nyman's testimony about White's statements. We disagree.

¶ 41                                    1. *Truth and Admissibility*

¶ 42 The reason defendant's argument fails is nuanced and turns in large part on the difference between truth and admissibility.

¶ 43 In a criminal jury trial, the arbiter of truth is the jury, not the trial judge. Before the jury reaches a verdict—a word roughly derived from Latin for "a declaration of the truth" (Black's Law Dictionary (11th ed. 2019) (*veredictum*))—everything is merely evidence. If Nyman's body camera video had been admitted into evidence, his testimony and the video would merely have

been two pieces of competing evidence from which the jury could have discerned what White truly said on February 14, 2022. We cannot assume, as defendant does, that Nyman's testimony is obviously inaccurate because it is contradicted by the video; that determination would have been for the jury.

¶ 44 As a consequence of the jury's truth-finding role, the trial judge is relegated to the preliminary question of admissibility—that is, deciding what testimony and materials the jury can consider when determining the truth. See Ill. R. Evid. 104(a) (eff. Jan. 1, 2011). Once something is admitted into evidence, the final determination of its weight and credibility rests with the jury. See Ill. R. Evid. 104(e) (eff. Jan. 1, 2011). Of course, testimony may reach the jury before the judge can decide the preliminary question of admissibility; in such circumstances, a party may move to strike that testimony on the basis that it was inadmissible. 3 Robert J. Steigmann, Illinois Evidence Manual § 20:10 (4th ed. 2006) ("It is not always necessary that an objection be made before the evidence comes in, in order for a motion to strike to be good. Sometimes it is not possible to make the objection before an answer is given."). If the trial court grants the motion and provides the jury with a cautionary instruction, then the jury should, at least in theory, disregard the stricken testimony. But see *United States v. Myers*, 917 F.2d 1008, 1010-11 (7th Cir. 1990) (explaining that reasonable persons may differ about whether cautionary instructions do more harm than good).

¶ 45 However, testimony is not inadmissible simply because counsel knows that it could be contradicted by a video not in evidence but which counsel believes would be entitled to greater evidentiary weight. The remedy in such a situation is not for counsel to move to strike the testimony but to cross-examine the witness to correct the errant testimony; if the witness fails to conform his testimony to what is shown on the video, counsel might then be able to introduce the video itself as impeaching or substantive evidence. In the present case, defendant does not

challenge counsel's decision to avoid taking these steps, which would have drawn even greater attention to White's statements about her view that the car was stolen.

¶ 46    Accordingly, defendant's argument can succeed only if Nyman's testimony was *inadmissible*; if Nyman's testimony was merely *false* or *inaccurate* (*i.e.*, subject to being disproven by other evidence), then a motion to strike would have been futile, and counsel could not have been ineffective for failing to make the motion. See *Smith*, 2014 IL App (1st) 103436, ¶ 64. The video is pertinent to our analysis of what an objectively reasonable attorney would have done, not because the video is necessarily *true*, but because counsel's demonstrated familiarity with the video was one aspect of the circumstances that informed her response to Nyman's contradictory testimony. See *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010) (noting that courts defer to "strategic choices *** made after investigation of the law and the facts").

¶ 47                    2. *White's Statements*

¶ 48    Defendant argues, correctly, that Nyman's testimony included hearsay by White. Hearsay is an out-of-court statement introduced to prove the truth of the matter asserted in the statement. Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). The problem with hearsay is that it bypasses the usual truth-finding process in two ways: (1) the jury cannot gauge the declarant's credibility because the jury was not observing the declarant when the statement was made and (2) the opposing party cannot test the veracity of the statement by cross-examining the declarant. See *People v. Cook*, 2018 IL App (1st) 142134, ¶ 31. Because of these inherent dangers, the hearsay rule provides that hearsay is inadmissible unless an exception applies (Ill. R. Evid. 802 (eff. Jan. 1, 2011)); most exceptions require some threshold showing of trustworthiness in order to justify bypassing the usual truth-finding process. See *People v. Caffey*, 205 Ill. 2d 52, 89 (2001).

¶ 49        Here, Nyman's testimony was as follows: "Ms. White told us that she believed the vehicle was stolen. It had different plates on it. I asked what made her believe that. She said [defendant] showed up with it about a month ago, said he paid someone $4,000—." Because we are considering only the preliminary question of admissibility, we are not concerned with whether Nyman's recollection of White's statements was *true* but whether his testimony was *admissible* when taken at face value.

¶ 50        As explained above, the trial court properly found that some of White's other statements to Nyman fell under the hearsay exception of forfeiture by wrongdoing. Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011). Defendant's inability to cross-examine White resulted from his own wrongdoing, so he forfeited his right to prevent the admission of her statements on hearsay grounds, even in the absence of a threshold showing of trustworthiness. The fact that the court did not address these specific statements is immaterial because a hearsay objection would have been overruled for the same reason that the State's motion *in limine* was granted. See *People v. Holmes*, 397 Ill. App. 3d 737, 745 (2010) ("It is axiomatic that a defense counsel will not be deemed ineffective for failing to make a futile objection.").

¶ 51        However, a finding that the proponent has proven forfeiture by wrongdoing does not make other evidentiary rules more lenient. The State is to be placed in the same position it would have been in had the witness testified, including any evidentiary limitations on such testimony; it should not be placed in a *better* position. For this reason, those statements are not *automatically* admissible; they could still be irrelevant or inadmissible on some other basis. See *People v. Hanson*, 238 Ill. 2d 74, 99 (2010) (explaining that statements admitted under the forfeiture by wrongdoing exception must be "relevant and otherwise admissible"); see also Ill. R. Evid. 402 (eff. Jan. 1, 2011) ("Evidence which is not relevant is not admissible."). According to

defendant, White's statements were inadmissible because they included double hearsay. We first address this thorny question and then return to the question of relevance.

¶ 52                                      a. Double Hearsay

¶ 53         Illinois Rule of Evidence 805 (eff. Jan. 1, 2011) provides, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." The language of Rule 805 is cumbersome, but its application to a witness's testimony is more straightforward. Consider the declarant's statements as though the declarant were on the stand and determine whether any part of those statements includes inadmissible hearsay by a second declarant. If so, that part of the witness's testimony is inadmissible *double* hearsay. The same process can be used again to determine whether any part of the second declarant's statement includes inadmissible hearsay by a third declarant, in which case that part of the witness's testimony is inadmissible *triple* hearsay, and so on. See, *e.g.*, *United States v. Reid*, 911 F.2d 1456, 1463 n.7 (10th Cir. 1990) ("Four statements are involved: (a) the probation officer stated (b) that the [Bureau of Alcohol, Tobacco, and Firearms] agent stated (c) that the inmate stated (d) that the defendant stated that he would get revenge."). Although the process may involve the consideration of multiple declarant's statements and hearsay exceptions, the ultimate determination of admissibility is always focused on *the witness's testimony* (here, Nyman's testimony) and not, as defendant argues, what materials not in evidence tell us about what the out-of-court declarant may have actually said.

¶ 54         Here, the trial court held that White's statements fell under the forfeiture by wrongdoing exception to the hearsay rule. For purposes of a double hearsay analysis, this meant that White's statements to Nyman could be considered as though she had made them on the stand instead. Recall that, according to Nyman, White said, "I believe the vehicle is stolen. It has

- 17 -

different plates on it. [Defendant] showed up with it about a month ago and said he paid someone $4,000 [for it]." White's first statement clearly does not include hearsay because she was speaking about her own beliefs; we will return to the *relevance* of this statement shortly. White's statements that the plates were "different" and that defendant showed up with the vehicle about a month earlier also do not include hearsay, even though her knowledge may have been secondhand, because White was not purporting to relay an assertion by another person. See 2 Kenneth S. Broun *et al.*, McCormick on Evidence § 247 (July 2022 Update) (distinguishing between the hearsay rule and the rule requiring firsthand knowledge).

¶ 55 White's final statement at first appears to include hearsay because defendant (a second declarant) told White (the first declarant), "I paid $4,000 [for it]." However, defendant's statement is defined by rule as "not hearsay" because it was being offered against him by his opponent, the State. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015); *cf. Aliotta v. National R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003) ("[Federal Rule of Evidence 801(d)(2) (eff. Dec. 1, 1997)], on its face, merely defines as non-hearsay certain hearsay-like evidence.").

¶ 56 Prior to adopting the Illinois Rules of Evidence, the Illinois Supreme Court treated an opposing party's statements as "admissible as an exception to the rule excluding hearsay." *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998); see Michael H. Graham, Handbook of Illinois Evidence § 801.14, at 945 (2024 ed.) (noting this technical change from the common-law definition of hearsay). A resulting problem of the change is that Rule 805, by its terms, applies only to the admissibility of "[h]earsay within hearsay," as opposed to what we have in this case: "not hearsay" within hearsay. See 30B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 7042 (June 2024 Update) (pointing out "this messy corner of rule-based awkwardness").

¶ 57       As explained above, the inquiry into a combined out-of-court statement is always whether any given statement is *inadmissible hearsay*. "[I]f each out-of-court statement in a combined statement, analyzed independently, would be admissible over a[n Illinois] Rule of Evidence 802 objection, the [combined] out-of-court statement overcomes a hearsay objection as well. If any statement is barred by Rule 802, however, the combined statement is inadmissible." *Id.* We have tacitly followed this approach in previous cases applying the Illinois Rules of Evidence. See, *e.g.*, *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶¶ 100-101 (finding no bar to admission of a combined statement where "neither of the statements was offered for [its] truth" and was therefore not hearsay); *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 32 (finding party-opponent's statement was inadmissible because it included inadmissible hearsay); *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶¶ 184-185 (finding no bar to the admission of hearsay where the first-layer statement fell under an exception and the second-layer statement was the statement of a party-opponent); *cf. United States v. Green*, 258 F.3d 683, 690 (7th Cir. 2001) (reaching the same conclusion as *Holland* under the Federal Rules of Evidence).

¶ 58       In sum, White's statements were admissible hearsay, and defendant's "not hearsay" statement would have been admissible over a Rule 802 objection if White had relayed it on the stand. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015). Consequently, Nyman's testimony relaying White's statements did not include any inadmissible hearsay or double hearsay. *Holland*, 2013 IL App (5th) 110560, ¶¶ 184-185; accord *Green*, 258 F.3d at 690. Accordingly, a motion to strike his testimony on hearsay grounds would not have been granted, so defense counsel was not deficient for failing to make the motion. We need not address the State's alternative argument that White's statements had limited admissibility for a nonhearsay purpose.

¶ 59                    b. White's Lack of Firsthand Knowledge

¶ 60        Defendant argues that White's statements were not based on firsthand knowledge but on secondhand information she obtained from defendant's aunt. See 2 Kenneth S. Broun *et al.*, McCormick on Evidence § 247 (July 2022 Update) (distinguishing between the hearsay rule and the rule requiring firsthand knowledge); 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 10 (July 2022 Update) ("Technically, if on its face the witness's testimony purports to describe observed facts but the testimony rests on statements of others, the objection is that the witness lacks firsthand knowledge."). Here again, our focus is on the admissibility of Nyman's account of White's statements and not on what White said on the body camera video.

¶ 61        It is true that "as a general proposition, the out-of-court declarant must have had an opportunity to observe the fact declared"—that is, the declarant must have had "personal knowledge." 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 10 (July 2022 Update); see *People v. Wesley*, 2019 IL App (1st) 170442, ¶ 26 (" '[P]ersonal knowledge' *** is knowledge acquired by one's own senses."); see also Ill. R. Evid. 602 (eff. Jan. 1, 2011) (establishing a personal knowledge requirement for witnesses). "The requirement of personal knowledge is one of conditional relevancy governed by Ill. R. Evid. 104(b)[ (eff. Jan. 1, 2011)] ***." Michael H. Graham, Handbook of Illinois Evidence § 602.1, at 491 (2024 ed.). Evidence is relevant when it has any tendency to make a fact of consequence more probable or less probable; irrelevant evidence is inadmissible. Ill. Rs. Evid. 401, 402 (eff. Jan. 1, 2011).

¶ 62        Accordingly, the party seeking to introduce a statement under a hearsay exception needs to supply a foundation of "evidence *** sufficient to support a finding that the [declarant] ha[d] personal knowledge of the matter" for the statement to be admitted into evidence. See Ill. R. Evid. 602 (eff. Jan. 1, 2011); but see Ill. R. Evid. 804(b)(4)(A) (eff. Jan. 1, 2011) (providing that

- 20 -

the hearsay exception for statements of personal or family history does not require a foundation of personal knowledge). "Personal knowledge may appear from [the declarant's] statement or be inferable from the circumstances." Michael H. Graham, Handbook of Illinois Evidence § 602.1, at 492 (2024 ed.). The burden for laying a foundation of personal knowledge is extremely low; "the trial judge plays only a limited, screening role, merely deciding whether the foundational testimony would permit a rational juror to find that the [declarant] possesses the firsthand knowledge." 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 10 n.7 (July 2022 Update); see 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 53 (July 2022 Update) ("The judge cannot pass on the credibility of the foundational testimony."). Even so, this low burden must be satisfied; in the absence of personal knowledge, the hearsay declarant's statement is pure speculation that should play no part in the jury's determination of what actually happened. Therefore, hearsay admitted without a sufficient foundation of personal knowledge can be stricken on the opposing party's motion. See 1 Kenneth S. Broun *et al.*, McCormick on Evidence § 10 n.6.50 (July 2022 Update).

¶ 63 Here, Nyman's testimony, if credible, would permit a rational juror to conclude that White saw defendant arrive in the vehicle, saw fictitious plates on the vehicle, and heard defendant say that that he paid $4000 for the vehicle. This was sufficient to meet the low bar for admissibility under Rule 602. We note that the State was not required to establish *defendant's* personal knowledge that he paid $4000 for the vehicle because the personal knowledge requirement does not apply to a party-opponent's statement. See Michael H. Graham, Handbook of Illinois Evidence § 801.14, at 947 (2024 ed.) (citing *Waugh v. Cender*, 29 Ill. App. 2d 408 (1961)). Because the State laid a sufficient foundation establishing White's personal knowledge, a motion to strike Nyman's testimony on this basis would have been properly denied.

¶ 64    It is true that Nyman also relayed White's "belief" that the car was stolen. Arguably, this extends beyond facts personally known to White to state something more in the nature of a conclusion than a personal observation. Assuming that such testimony would have been impermissible from White herself and should not, therefore, have been related by Nyman, its admission was harmless because defendant had stipulated before trial that the vehicle was converted and could no longer contest that fact. See *People v. Woods*, 214 Ill. 2d 455, 469 (2005) ("Generally speaking, a defendant is precluded from attacking or otherwise contradicting any facts to which he or she stipulated.").

¶ 65    Furthermore, even if a motion to strike Nyman's recounting of White's statement had a chance of success, the remedy would not necessarily have been for the trial court to strike the testimony; the court instead could have denied the motion without prejudice and allowed the State to cure the lack of a foundation by introducing evidence about the source of White's knowledge—the information from defendant's aunt—which may have further prejudiced defendant. See Ill. R. Evid. 104(b) (eff. Jan. 1, 2011) (providing that evidence may be introduced "subject to" the later introduction of foundational testimony); *Myers v. Williams*, 160 Ill. App. 3d 707, 712-13 (1987) (noting that the court has the discretion to make such a decision). The State's offer to "rephrase" enabled counsel to forgo the motion and avoid the possibility of this outcome. Avoiding a reference to White's lack of personal knowledge conferred at least some potential benefit on defendant and could have been part of a rational trial strategy, albeit an unsuccessful one. See *People v. Faulkner*, 292 Ill. App. 3d 391, 394 (1997) ("[Defense] strategies must be shown to be more than unsuccessful to overcome a presumption of soundness. They must appear irrational and unreasonable in light of the circumstances that defense counsel confronted at the time."). For this reason, while many attorneys would have understandably moved to strike the

testimony in question, counsel's decision to forgo such a motion here was not objectively unreasonable under *Strickland*'s deferential standard.

¶ 66 Because defendant has failed to show that his counsel's performance was deficient, his argument that his counsel was ineffective necessarily fails. See *Strickland*, 466 U.S. at 697; *Evans*, 186 Ill. 2d at 94.

¶ 67 C. Constitutionality of the Unlawful Possession of a Weapon by a Felon Statute

¶ 68 Defendant argues that his convictions for unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)) must be reversed because the statute is facially unconstitutional under the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (interpreting U.S. Const., amends. II, XIV). This court recently addressed an identical second amendment argument in *People v. Burns*, 2024 IL App (4th) 230428, *pet. for leave to appeal pending*, No. 130804 (filed June 21, 2024). For the reasons ably set forth in that opinion, we find that "*Bruen* simply does not apply to defendant," who is a felon rather than a law-abiding citizen. *Id.* ¶ 21; accord *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37; *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 16. Indeed, the United States Supreme Court recently confirmed that *Bruen* did not affect its previous holding that "prohibitions *** on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *United States v. Rahimi*, 602 U.S. ___, ___, 144 S. Ct. 1889, 1902 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.26 (2008)). Accordingly, defendant's facial challenge to the constitutionality of the statute fails, as does his challenge to the validity of his conviction.

¶ 69 III. CONCLUSION

¶ 70 For the reasons stated, we affirm the trial court's judgment.

¶ 71 Affirmed.

*People v. Gardner*, 2024 IL App (4th) 230443

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 22-CF-164; the Hon. William G. Workman, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Anne C. Fung, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Erika Reynolds, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and David E. Mannchen, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |