# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59334-3-II |
| Respondent, | |
| v. | |
| MICHAEL RAYMOND BIGALK, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J.—Michael Bigalk appeals his convictions for first degree kidnapping, three counts of second degree assault, two counts of felony violation of a court order, and two counts of tampering with a witness. Bigalk contends that the trial court abused its discretion by admitting Jennifer Martin's statements to law enforcement under the forfeiture by wrongdoing doctrine because the trial court's finding that Bigalk intentionally caused Martin's unavailability was not supported by substantial evidence. Bigalk raises a number of other claims of error in a statement of additional grounds for review, RAP 10.10, including that substantial evidence did not support his convictions and that he received ineffective assistance of counsel.

We conclude that substantial evidence supported the trial court's finding that Bigalk intentionally caused Martin's unavailability to testify. And we conclude that the claims in Bigalk's statement of additional grounds fail. Accordingly, we affirm Bigalk's convictions.

FACTS

A. Background

On August 17, 2022, Michael Bigalk forced his girlfriend, Jennifer Martin, into his truck, repeatedly hitting her as he drove away. Earlier that day, Bigalk had tried to confront Martin who was staying at a friend's, Angela Bohrer, house, but Bohrer refused to let Bigalk enter the residence, even after he repeatedly threw rocks at her window. Martin only agreed to meet Bigalk because he had her dog and she wanted it back. Martin asked her friend William Clark to come with her because Bigalk had been abusive to her. When Bigalk forced Martin into his car, Clark called 911 and tried to follow Bigalk but stopped when Bigalk fired a gun out the window.

The next day, Martin communicated her location to Clark who alerted law enforcement. Law enforcement found Martin and Bigalk in a shed behind Bigalk's mother's house. Bigalk was lying on top of Martin, who was naked and covered in bruises, including marks on her face and neck that were consistent with strangulation. Martin requested assistance in leaving the residence. Once Martin had successfully removed herself and her belongings from Bigalk's residence, she made a statement to law enforcement, which was recorded on the deputies' body-worn camera.

In the statement, Martin said that when she met Bigalk to get her dog, he "threw her on the ground and stomped on her head and then threw her in his truck and left." 8 Verbatim Rep. of Proc. (VRP) at 432. She also said that he shot at Clark with his handgun. On the way to Bigalk's house, he punched her in the face multiple times. He continued to punch and strangle her when they reached his residence. At one point, Bigalk strangled Martin so hard she urinated on herself. Any time Martin tried to leave the shed, Bigalk would follow her and bring her back or "beat her up." *Id.* at 455. And the gates on the fence surrounding the shed were padlocked.

The State charged Bigalk with multiple counts of assault and kidnapping. At arraignment, the trial court issued no-contact orders prohibiting Bigalk from communicating directly or through third parties with either Bohrer or Martin.

While in custody, Bigalk made approximately 950 calls in which he attempted to ascertain Martin's whereabouts and persuade his friends and family to convince Martin not to cooperate with the prosecution. In a phone call on February 13, 2022, Bigalk told his mom to go talk to Lumsden, whom Martin was staying with, to see what was "really going on" because Jen doesn't understand what's been going on. Ex. 3 at 15. Bigalk complained that "[t]hat's what sucks about being in here. Because if I was out there mom, I would have already had all those girls[*] statements. Those girls would have already went down to the county city building. They would have already done that." *Id.* 4-5.

The next day, Bigalk told his friend Andrea that Martin should go to the courthouse to recant her statement. Bigalk went on to explain that Jen would benefit if she recanted her statement:

> [Jen] is just sitting there thinking it's gonna go away, and it's not gonna go away. . . . [S]he's just out there doing whatever she's doing, struggling, when she can have a home . . . [S]he should have done the right thing, man. My family would have took her in, and she wouldn't be living in the streets, . . . and I would have already been out.

Ex. 5 at 22-23. Andrea asked Bigalk if he knew where Martin was staying and Bigalk told her.

On February 16, 2023, Bigalk asked his mom to call his friend Crystal because "she's very good [ ] friends with" Lumsden and "you guys need to go have a talk with . . . people. You know what I mean?" Ex 6. at 7. That same day, Martin called the victim advocate to update her contact information because she was homeless and using a friend's phone. She scheduled a phone meeting with the State for February 17, 2023. Martin did not answer the phone for this meeting.

3

In a conversation between Bigalk and his friend Jackie on February 25, he instructed her to talk to Mike. Bigalk states that Martin and Bohrer "need to do the right thing, . . . [T]hey need to come tell the truth." Ex. 7 at 29. Jackie confirms, saying "I can do that for you. . . I will do that for you." *Id.* at 30. Bigalk then tells Jackie that his mom could probably rent his room out to her because he doesn't "leave [his] friends hanging." *Id.* at 33.

On February 28, Martin called the prosecutor's office and contended that she was not a victim and that Bigalk should not be punished for things he did not do. On March 10, Martin fully recanted her statement and insisted that she did not want to testify in court or be involved with the case.

Bohrer also recanted her statement and at one point walked several miles to the county city building to request that the charges against Bigalk were dropped. Bohrer informed the prosecutor and victim advocate that several of Bigalk's acquaintances had threatened her and blamed her for his criminal charges and Bohrer stated that she feared for her life if she did not recant her statement.

A victim advocate spoke to Martin on the phone and informed Martin that she would be receiving an email with the trial date. Martin replied that " 'she didn't know if she'd be around by then.' " Clerk's Papers (CP) at 285. The State emailed Martin a subpoena and called her the morning before trial. Martin did not respond to either communication.

The State amended the information to add charges for violating a court order, witness tampering, and conspiracy to tamper with witnesses. At the start of trial, the State filed a motion to admit Martin's statements under the doctrine of forfeiture by wrongdoing based on the facts outlined above. After hearing argument on the matter, the trial court granted the State's motion. The trial court found "clearly, cogently, convincingly," that Bigalk communicated with his

contacts in "an effort to at least initially get these witnesses to change their minds, . . . in particular Ms. Martin's." 3 VRP (Jan. 4, 2024) at 118. The trial court further found that "Bigalk was making efforts within his community to prevent these witnesses from testifying, at least in the way that they had portrayed the evidence when it was collected initially by law enforcement." *Id.* at 119. The trial court concluded that Martin was unavailable because Martin had been in reliable contact with the State until the State told her they were going to send her a subpoena. And, the trial court concluded, Martin's unavailability "was procured by the acts of Mr. Bigalk or by people on his behalf over the course of the last ten months." *Id.* at 120.

B. Trial

At trial, the State's witnesses testified consistent with the above facts. As anticipated, Martin did not testify. The trial court admitted her recorded statement into evidence. The jury convicted Bigalk of 11 counts. With regard to Martin, the jury convicted Bigalk of two counts of first degree kidnapping with firearm enhancement; second degree assault with a firearm enhancement, second degree assault, fourth degree assault, felony violation of a court order, and witness tampering. At sentencing, the trial court dismissed the first degree kidnapping charged in count 1 because convicting Bigalk of two counts of kidnapping for the same conduct would violate the prohibition against double jeopardy. The jury also convicted Bigalk of second degree assault against Clark with a firearm enhancement. And the jury convicted Bigalk of felony violation of a no-contact order and witness tampering as to Bohrer. Bigalk appeals his convictions, arguing that the evidence was insufficient to support the trial court's finding that Bigalk intentionally caused Martin's unavailability and that this error was not harmless. Bigalk raises several additional claims of error in a statement of additional grounds (SAG).

DISCUSSION

I. FORFEITURE BY WRONGDOING

Bigalk argues that the trial court abused its discretion by admitting Martin's statements under the forfeiture by wrongdoing doctrine because substantial evidence did not support the trial court's finding that Bigalk intentionally caused Martin's absence. We disagree. Here, substantial evidence shows that it is highly probable that Bigalk acted intentionally to cause Martin's absence.

A. Legal Principles

Under the Sixth Amendment, criminal defendants have the right to confront the witnesses against them. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). But when the criminal defendant acts to procure the witness' unavailability, the criminal defendant loses the right of confrontation. *Id.* at 10-11. This doctrine is known as forfeiture by wrongdoing and was first adopted by our supreme court in *State v. Mason*, 160 Wn.2d 910, 925, 162 P.3d 396 (2007).

The potential violation of the right of confrontation implicates a constitutional issue that we review de novo. *Dobbs*, 180 Wn.2d at 10. We review a challenge to a trial court's findings of fact for substantial evidence. *Id.* A trial court's decisions on admissibility of evidence are reviewed for abuse of discretion. *Id.*

To determine whether statements made by an unavailable witness are nevertheless admissible under the forfeiture by wrongdoing doctrine, "the trial court must decide whether the witness has been made unavailable by the wrongdoing of the accused based upon evidence that is clear, cogent, and convincing." *Mason*, 160 Wn.2d at 927. Because the standard of proof is clear, cogent, and convincing evidence, the fact at issue here, whether Bigalk intentionally caused

Martin's absence from trial, must be shown to be " 'highly probable.' " *Dobbs*, 180 Wn.2d at 11 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

The trial court need not determine that the defendant's conduct caused the witness to be unavailable beyond a reasonable doubt. *Id.* at 16. Therefore, "[a] court does not need to rule out all possibilities for a witness's absence; it needs to find only that it is highly probable that the defendant intentionally caused it." *Id.*

No prior Washington court has held that in order to prove a witness' absence was caused by the defendant's wrongdoing, the evidence must support a finding that the defendant made a threat or committed some violent act in order to ensure a witness' unavailability. In *State v. Hernandez*, 192 Wn. App. 673, 686, 368 P.3d 500 (2016), this court held that statements were admissible under the forfeiture by wrongdoing doctrine when the criminal defendant used coded language to conspire with the witness' mother to take the witness, a child, out of the country so the child was unavailable to testify. There was no evidence of a threat of violence employed to procure the witness' absence in that case. *Id.* Rather, the dispositive inquiry, as identified in *Dobbs*, is whether substantial evidence shows that it is highly probable that a defendant intentionally caused a victim's absence. 180 Wn.2d at 16.

We review a trial court's erroneous conclusion that a defendant forfeited the right to confront witnesses for constitutional harmless error. *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). Under the constitutional harmless error standard, the State must establish that the error was harmless beyond a reasonable doubt. *Id.* The State can do this by demonstrating that "the untainted evidence alone is so overwhelming that it necessarily leads to a finding of guilt." *State v. Ng*, 110 Wn.2d 32, 38, 750 P.2d 632 (1988).

B. Application

First, Bigalk argues that substantial evidence did not support the trial court's finding that Bigalk's conduct was intended to prevent Martin from testifying. Bigalk contends that the evidence compels the conclusion that Bigalk *wanted* Martin to be present and testify so that she could correct her original statement on the record. But substantial evidence in the record supports the conclusion that Bigalk, at least initially, believed that Martin would not be asked to testify in court if she recanted her statement because the charges against him would be dropped. Bigalk argues that because the case proceeded to trial, Bigalk intended for Martin to testify, albeit untruthfully. Bigalk's argument that asking a witness to perjure themselves is meaningfully distinct from procuring a witness' unavailability in court is unconvincing. Indeed, other courts considering the same matter have held that defendants who intend to cause a witness to perjure themselves intend for that witness to be unavailable for confrontation clause purposes. *People v. Nelson*, 156 A.D.3d 1112, 1117, 67 N.Y.S.3d 719 (3d Dept. 2017) ("[A] witness is practically or effectively unavailable where the witness recants his or her initial statements or otherwise changes his or her version of the events as a result of misconduct on the part of the defendant."); *see People v. Gardner*, 2024 IL App (4th) 230443, ¶ 28, 247 N.E.3d 708, 478 Ill. Dec. 617, appeal pending, No. 131009 (Ill. Sept. Term 2025). If we were to hold otherwise, witness tamperers would have an incentive to procure a witness' unavailability by asking them to perjure themselves rather than refrain from testifying. *Nelson*, 156 A.D.3d at 1117; *People v. White*, 4 A.D.3d 225, 226, 772 N.Y.S.2d 309 (1st Dept. 2004).

Here, Bigalk repeatedly asked his colleagues to tell Martin to recant her statement and Bigalk, through his colleagues, offered Martin a place to live and the support of his family in

exchange for her recanting her statement. It is undisputed that Bigalk intended for Martin to recant her statement by perjuring herself at trial. Therefore, substantial evidence supports the conclusion that Bigalk's conduct was intended to procure Martin's unavailability.

Next, Bigalk argues that the evidence was insufficient to establish that Bigalk's conduct actually caused Martin's absence. Bigalk contends this is so because prior to anyone contacting Martin on Bigalk's behalf, a mutual friend told Bigalk that Martin "still loves him and doesn't know what to do." Br. of Appellant at 21 (citing Ex. 3 at 15). But Bigalk's prison phone calls demonstrate that Bigalk repeatedly asked his friends to tell Martin to recant her statement. In many of these conversations, Bigalk said that he loves Martin and implied that if Martin recanted her statement, she would be rewarded with a place to live and the support of his family. Given the dynamics of domestic violence, it is reasonable to assume that Bigalk's emotional appeals and history of violent behavior toward Martin resulted in Martin's unavailability at trial. Moreover, Martin, who had previously been cooperative with the State, recanted her statement just three days after Jackie promised Bigalk that she would get Martin to "tell the truth." Ex. 7 at 29. These circumstances support the conclusion that Martin recanted her statement and disengaged from the case as the result of Bigalk's conduct. Because substantial evidence supports the trial court's findings that Bigalk intentionally caused Martin's absence, the trial court did not abuse its discretion by admitting Martin's statements into evidence.

Even if the trial court's finding that Bigalk intentionally caused Martin's unavailability was not supported by substantial evidence, any error was harmless beyond a reasonable doubt. Here, the overwhelming untainted evidence supports Bigalk's convictions. Martin's recorded statement had no bearing on Bigalk's convictions for crimes committed against Bohrer and Clark or the

crimes committed while Bigalk was in custody. And, setting aside Martin's recorded statement, the evidence supported the conclusion that Bigalk kidnapped and assaulted Martin. The evidence supported the conclusion that Martin did not get into Bigalk's truck willingly nor was she able to leave Bigalk's residence without assistance. Clark testified that the only reason Martin agreed to meet with Bigalk was because he had her dog and that she asked Clark to accompany her because Bigalk had been violent with her in the past.[1] In Clark's 911 call, made contemporaneous to him following Bigalk and Martin, he describes fighting in the truck and states that Bigalk took off with Martin and would not let her out of the car. Clark's text messages to Bohrer at the time of the incident confirm that Bigalk "took off with her [and] then started shooting at us." Ex 40.

And the circumstances in which the deputies found Martin demonstrate that Martin was not free to leave. Deputies found Martin lying underneath Bigalk in a shed surrounded by a fence with padlocked gates. Martin was naked and covered in bruises, including bruises consistent with grip marks on her right arm and bruises around her neck consistent with being strangled. Martin requested that the deputies assist her so that she could leave. Martin's injuries paired with Clark's 911 call describing the fight in the car and that Bigalk was armed also support Bigalk's assault conviction. Accordingly, the untainted evidence overwhelmingly supported Bigalk's guilt and any error in admitting Martin's recorded statement was harmless beyond a reasonable doubt.

---

[1] Only testimonial statements implicate the confrontation clause. *State v. Burke*, 196 Wn.2d 712, 725, 478 P.3d 1096 (2021). A statement is testimonial when its primary purpose is to "establish past facts in order to investigate or prosecute a crime." *Id.* at 727. Martin's statements made to Clark prior to the offense are non-testimonial. Therefore, the confrontation clause is not implicated.

## II. STATEMENT OF ADDITIONAL GROUNDS

In a SAG, Bigalk argues (1) many of the State's witnesses were not credible, (2) insufficient evidence supported his first degree kidnapping conviction, (3) Bigalk's trial counsel was ineffective because he failed to object to the 911 operator's testimony, (4) Bigalk's trial counsel was ineffective because counsel failed to call a witness who would testify that she saw Martin strike Bigalk before Martin got in his truck, (5) the State violated its discovery obligations by failing to timely disclose Martin's and Bohrer's statements recanting their allegations against Bigalk prior to the pretrial motions, (6) the trial court erred in considering Martin's and Bohrer's statements as the basis for its finding that Bigalk waived his right to confront Martin, and (7) the State violated the privacy act when one of the investigating officers recorded him, Martin, and Bohrer without their permission. Bigalk's other claims of error are too vague to allow us to identify specific issues and we do not reach them.

Bigalk's arguments concerning the credibility of the State's witnesses fail because "[c]redibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990), *abrogated on other grounds by State v. Crossguns*, 199 Wn.2d 282,.505 P.3d 529 (2022). Bigalk's argument that insufficient evidence supports his convictions relies entirely on his assertion that the State's witnesses are not credible. This argument likewise fails because we review the record in the light most favorable to the State. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017).

Bigalk fails to demonstrate that his trial counsel was ineffective. To prevail on an ineffective assistance of counsel claim, Bigalk must show that his counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S.

668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Bigalk does not explain why an objection to the 911 operator's testimony authenticating the 911 call would be sustained and therefore does not demonstrate that counsel performed deficiently. With regard to Bigalk's assertion that his counsel was deficient for failing to call a favorable witness, the decision "to call a witness is a matter of legitimate trial tactics that presumptively does not support a claim of ineffective assistance of counsel." *State v. Davis*, 174 Wn. App. 623, 639, 300 P.3d 465 (2013). And Bigalk does not assert that counsel failed to adequately investigate or prepare for trial. *See id.* Nor does Bigalk explain how this witness' testimony would exonerate him in light of the overwhelming evidence supporting Bigalk's convictions.

Even if Bigalk's argument that the State violated its discovery obligations by failing to provide Bigalk with Martin's and Bohrer's recantations prior to the pretrial proceedings was viable, Bigalk fails to demonstrate that this error prejudiced him. And, to the extent that Bigalk is arguing that the State did not inform him of Martin's and Bohrer's recantations prior to trial, the record belies that claim. Bigalk's related argument that the trial court erred by considering Martin's and Bohrer's recantations, which Bigalk claims are inadmissible, as part of its ruling regarding forfeiture by wrongdoing fails because under ER 104(a) the trial court may consider evidence that is not admissible at trial when deciding preliminary questions related to the admissibility of evidence.

Finally, Bigalk's claim that the State violated the Washington privacy act, ch. 9.73 RCW, by recording him, Martin, and Bohrer without their consent fails. Bigalk cannot assert a privacy act violation on behalf of Martin and Bohrer. *See* RCW 9.73.060 (allowing a person to bring an

No. 59334-3-II

action where his or her own right has been violated). As this claim relates to Bigalk, Bigalk did not raise this issue below, accordingly it is not preserved for appeal. RAP 2.5(a).

## CONCLUSION

We conclude that the trial court did not abuse its discretion by admitting Martin's recorded interview with law enforcement because substantial evidence supported the trial court's finding that Bigalk intentionally caused Martin to be unavailable. We further conclude that Bigalk's SAG claims are meritless. Accordingly, we affirm Bigalk's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

VELJACIC, J.

CHE, J.

13